**Exhibit A**

WRIT OF SUMMONS IN CIVIL ACTION

NOTICE OF SUIT TO SHERIFF OF ALLEGHENY
CO

TO DEFENDANT(S): You are notified that the
plaintiff(s)

has/have commenced an action against you which
you are

required to Defend.

     Michael McGeever, Director, Department of
Court Records

Date <u>02/17/2020</u>

Returnable <u>05/17/2020</u>

## WRIT OF SUMMONS IN CIVIL ACTION

## IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

| Plaintiff(s)<br><br>**Doe, John** | Case Number:<br>**GD-20-002649**<br><br>Type of pleading:<br>**Praecipe for Writ of Summons**<br><br>Filed on behalf of:<br>**Doe John**<br><br>**<u>Doe John</u>**<br>(Name of filing party) |
|---|---|
| Defendant(s)<br><br>**Gilead Sciences Inc.** | **[X]** Counsel of Record<br><br>**[ ]** Individual, If Pro Se<br><br>Name, Address and Telephone Number:<br><br>**412 9679400**<br>Attorney's State ID: **36578** |

**Michael McGeever, Director, Department of Court Records**

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY,
PENNSYLVANIA

| | | |
|---|---|---|
| JOHN DOE, | ) | CIVIL DIVISION |
| | ) | |
| Plaintiff, | ) | Docket No.:  GD-20-002649 |
| | ) | |
| v. | ) | |
| | ) | **ACCEPTANCE OF SERVICE** |
| GILEAD SCIENCES, INC., | ) | |
| | ) | |
| Defendant. | ) | Filed on Behalf of Plaintiff |
| | ) | |
| | ) | Counsel of Record for this Party: |
| | ) | **HORNE DALLER LLC.** |
| | ) | Vicki Kuftic Horne, Esq. |
| | ) | Pa. I.D. #36578 |
| | ) | |
| | ) | Nicole Daller, Esq. |
| | ) | Pa. I.D. #312224 |
| | ) | 1380 Old Freeport Rd., Suite 3A |
| | ) | Pittsburgh, PA  15238 |
| | ) | (412) 967-9400 |
| | ) | |
| | ) | JURY TRIAL DEMANDED |

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY,
PENNSYLVANIA

| | | |
|---|---|---|
| JOHN DOE, | ) | CIVIL DIVISION |
| | ) | |
| Plaintiff, | ) | Docket No.:  GD-20-002649 |
| | ) | |
| v. | ) | |
| | ) | |
| GILEAD SCIENCES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## ACCEPTANCE OF SERVICE

I, W. John Lee, Esquire, accept service of the Writ of Summons in the above-captioned matter on behalf of the Defendant, Gilead Sciences, Inc., and certify that I am authorized to do so.

February 25, 2020
_____
Date

_____
W. John Lee, Esquire
Morgan, Lewis & Bockius, LLP
1701 Market Street
Philadelphia, PA 19103-2921

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| JOHN DOE, | ) | CIVIL DIVISION |
| | ) | |
| Plaintiff, | ) | Docket No. GD 20-002649 |
| | ) | |
| v. | ) | |
| | ) | **COMPLAINT** |
| GILEAD SCIENCES, INC., | ) | |
| | ) | |
| Defendant. | ) | Filed on Behalf of Plaintiff |
| | ) | |
| | ) | Counsel of Record for this Party: |
| | ) | Vicki Kuftic Horne, Esq. |
| | ) | Pa. I.D. #36578 |
| | ) | Nicole Daller, Esq. |
| | ) | Pa. I.D. #312224 |
| | ) | Samantha Kovalyak, Esq. |
| | ) | Pa. I.D. #328175 |
| | ) | |
| | ) | HORNE DALLER LLC |
| | ) | 1380 Old Freeport Rd., Suite 3A |
| | ) | Pittsburgh, PA 15238 |
| | ) | Phone: (412) 967-9400 |
| | ) | Fax: (412) 967-0465 |
| | ) | vkhorne@hornedaller.com |
| | ) | ndaller@hornedaller.com |
| | ) | skovalyak@hornedaller.com |
| | ) | |
| | ) | **JURY TRIAL DEMANDED** |

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| JOHN DOE, | ) | CIVIL DIVISION |
| | ) | |
| Plaintiff, | ) | Docket No. GD 20-002649 |
| | ) | |
| v. | ) | |
| | ) | |
| GILEAD SCIENCES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## **NOTICE TO DEFEND**

You have been sued in court.  If you wish to defend against the claims set forth in the following pages, you must take action with twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defense or objections to the claims set forth against you.  You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any claim or relief requested by the plaintiff.  You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE.  IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

Lawyer Referral Service
Allegheny County Bar Association
4th Floor Koppers Building
436 Seventh Avenue
Pittsburgh, PA 15219
Telephone: (412) 261-5555

2

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

| | |
|---|---|
| JOHN DOE, | ) CIVIL DIVISION |
| | ) |
| Plaintiff, | ) Docket No. GD 20-002649 |
| | ) |
| v. | ) |
| | ) |
| GILEAD SCIENCES, INC., | ) |
| | ) |
| Defendant. | ) |

## **COMPLAINT**

AND NOW, comes Plaintiff JOHN DOE, by and through his attorneys, Horne Daller LLC, and files this Complaint, the following of which is a statement:

## **JURISDICTION AND PARTIES**

1.      Plaintiff, JOHN DOE, is an adult individual residing in Slippery Rock, Butler County, Pennsylvania 16057.

2.      Defendant, GILEAD SCIENCES, INC. is a publicly traded foreign corporation with a principal place of business located at 333 Lakeside Drive, Foster City, California 94404.

3.      Defendant is a biopharmaceutical company that regularly conducts business in the Commonwealth of Pennsylvania and throughout Allegheny County.

4.      At all times material hereto, the factual circumstances which give rise to this litigation occurred primarily in Allegheny County.

5.      Plaintiff's territory in the course of his employment with Defendant was originally "Pittsburgh South" which covered the area of Cranberry, Pennsylvania south to approximately Uniontown, Pennsylvania.  However, in December 2018, Plaintiff was also

directed to expand his coverage to the "Pittsburgh North" territory which covered the area of north of Cranberry to Erie, Pennsylvania.

6.      During the time period relevant hereto, Plaintiff worked with physician practices within Allegheny County, including but not limited, to UPMC.

7.      This Court has jurisdiction over the subject matter pursuant to 42 Pa.C.S. § 931(a).

8.      Venue in Allegheny County is proper under Pa.R.C.P. 2179(a) as Defendant regularly conducts business in this County, it is the county where the cause of action arose, and it is the county where a transaction or occurrence took place out of which the cause of action arose.


## FACTUAL BACKGROUND

9.      Plaintiff has more than 30 years' experience and a distinguished record in the pharmaceutical sales industry.

10.     Plaintiff routinely held training positions with each of his employers, a role that is assigned to employees with exceptional performance and leadership capabilities.

11.     His professional history in pharmaceutical sales is marked by high-achieving results including over 100% quota attainment in several years and for different companies, rankings in the top 5% of his area, excellence in leadership awards, rankings in the top 5 of several dozen sales representatives, and numerous sales awards.

12.     In the course of his employment, Plaintiff had ranked, at times, as the number one sales associate for his product with two (2) different pharmaceutical companies.

13.     Prior to commencing employment with Defendant, Plaintiff's employment included eight (8) years with Glaxo Smith Kline, first as a respiratory division sales representative, then as an oncology representative and finally in the HIV unit.

14.     After the Glaxo Smith Cline position, Plaintiff worked for Merck for five (5) years initially as an HIV Clinical Specialist in sales and then in a science consultant role concerning a Hepatitis C drug. Along with the significant sales results achieved as an HIV clinical Specialist, Plaintiff was able to earn his MBA to allow for advancement of his career to the science consultant role.

15.     Plaintiff continued to work with Hepatitis C medication when he was hired by Defendant in October 2015 to serve in the position of "HCV Therapeutic Specialist" for Defendant's "Pittsburgh South" territory.

16.     As an HCV Therapeutic Specialist, Plaintiff was responsible for pharmaceutical sales of Defendant's Hepatitis C medication throughout his region, and in that role, he developed professional relationships with medical providers interested in prescribing the Hepatitis C medication.

17.     In 2015, Plaintiff was a quarterly winner in the "Drive for Results" sales contest, and he had over 100% quota attainment.

18.     In 2017, Plaintiff won the award for Senior Regional Directors for productivity.

19.     That same year, Plaintiff ranked in the top 25 of 141 sales employees.

20.     In Plaintiff's 2017 year-end evaluation, Plaintiff's supervisor, Brian Vautier wrote:

> "[John Doe], based on my observations during this past year you have performed at an Exceeds level.  A #48 ranking in the salesforce is a strong achievement and one that you should be very proud of.  You are a great teammate and have supported our

initiatives with respect to our POA while bringing very high quality of work every day. I've continued to observe your customers and how they genuinely gravitate to the value you bring to them. Your credibility within your territory is unrivaled as is the team approach and your ability to communicate with your peers on a regular basis. You ensure to stay in close contact with all internal Gilead stakeholders as well as myself. You have been a fantastic fit within the Gilead culture and have demonstrated our core values as well! 2018 will continue to provide ample opportunities for TS's looking to continue to grow in their leadership position as well as being a solution driven individual within our Region! Thank you for all you do and the great year you had!"

21.     In that same review, Plaintiff's ethics were highlighted with the comment, "You have consistently demonstrated ethical and moral conduct" and coupled with, "Continue to act in the best interest of the company and set the standard example for all core values for our team!"

**Defendant's Employees "Selling the Spread"**

22.     In his role as an HCV Therapist, Plaintiff's job functions were highly regulated.

23.     In 2018, a new Hepatitis C drug entered the market from a competitor company which began to impact Defendant's sales and market lead.

24.     The result of such competition was for Defendant to shift its focus on the clinical benefits of its Hepatitis C drug and instead focus on tactics which highlighted the financial benefits of utilizing its drug, a qualifying 340B drug, touting the financial benefit compared to competitor's products.

25.     Plaintiff appropriately notified Defendant that its sales division personnel were engaging customers in 340B drug discount program discussion and selling customers on the financial benefits of Gilead products which claims are covered by Medicare and Medicaid.

26.     Such conduct of sales division personnel is prohibited pursuant to 62 P.S. § 1407(a)(2) which makes it unlawful to:

> solicit or receive or to offer or pay any remuneration, including any kickback, bribe or rebate, directly or indirectly, in cash or in kind from or to any person in connection with the furnishing of services or merchandise for which payment may be in whole or in part under the medical assistance program or in connection with referring an individual to a person for the furnishing or arranging for the furnishing of any services or merchandise for which payment may be made in whole or in part under the medical assistance program.

27.     This prohibited conduct, known as "340b selling" or "selling the spread" was undertaken by Plaintiff's supervisor's senior manager, Harry Durr, and personally witnessed by Plaintiff.

28.     It was also undertaken by Plaintiff's direct supervisor, Mr. Vautier, and personally witnessed by Plaintiff.

29.     These unlawful sales pitches by Mr. Durr and Mr. Vautier were not limited to a single customer or incident; rather, they occurred several times with several customers.

30.     In response to this unlawful conduct, Plaintiff escalated this matter as set forth more fully below.

**Defendant Directs Plaintiff to Steal Confidential Information**

31.     One of Plaintiff's largest accounts was University of Pittsburgh Medical Center ("UPMC").

32.     Plaintiff was pressured by his supervisors to acquire internal and confidential UPMC materials that would provide Defendant a competitive advantage in the market and assist in its negotiations with UPMC.

33.     The direction to acquire the confidential information came from Mr. Vautier who represented to Plaintiff that his supervisor, Mr. Durr, was directing the conduct.

34.     Specifically, Plaintiff was directed to obtain a treatment algorithm that describes the protocols physicians are supposed to follow in treating Hepatitis C.

35.     Defendant wanted Plaintiff to obtain a memo identifying the algorithm and how the competitor's drug was being used.

36.     On information and belief, the information sought is a trade secret of UPMC.

37.     His supervisor, Mr. Vautier, pressured both Plaintiff to obtain and an employee of UPMC to disclose the information, and when the UPMC employee declined to disclose confidential UPMC information, Mr. Vautier expressed that if they could not obtain the information, Mr. Durr intended to fire both Plaintiff and Mr. Vautier.

38.     Moreover, Defendant encouraged Plaintiff to mislead UPMC employees into providing the detail.

39.     Such conduct is expressly prohibited by the Pennsylvania Uniform Trade Secrets Act.  12 Pa.C.S. § 5301 *et seq.* (prohibiting using "improper means" to misappropriate a trade secret).

40.     Mr. Vautier expressed to Plaintiff that if Plaintiff failed to obtain the confidential documents, Plaintiff should expect to be terminated.

41.     Plaintiff declined to mislead UPMC or otherwise obtain the confidential information and, as a result, Mr. Vautier attempted to pressure UPMC into producing it; UPMC declined.

42.     Plaintiff also escalated this concern as set forth more fully below.

_**Defendant Provides Sales Division False and Misleading Information**_

43.     The Managed Care division was tasked with meeting with administrators of managed care plans to negotiate contracts on behalf of Gilead for its formulary status, whether as preferred status, a covered status, not approved or otherwise.  In general, the lower the tier the higher the ultimate cost to the patient.

44.     The higher the tier status the greater the likelihood a product would be prescribed by health care providers.

45.     "Fingertip Formularies" were developed through a third-party entity.

46.     The formularies were grids employees customized based on the third-party product as supplemented and updated with information from the Managed Care division that reflected managed care coverage for a product in a given territory

47.     The Fingertip Formularies were then used by sales representatives to provide to their customers, health care providers.

48.     The formularies were causing the sales division to provide false and misleading information to insurance providers.

49.     More specifically, the formularies were representing coverage of Defendant's drugs under a plan when, in actuality, the drugs were not covered and vice versa.

50.     For example, a formulary might show that under UPMC's health plan, Hepatitis C medicines were covered when they were not.

51.     As a consequence, sales representatives, relying on the formularies, would suggest to physicians that they could issue prescriptions as the drug would be covered under the plan, when in actuality, it was not.

52.     Defendant failed to take appropriate action in response to Plaintiff's complaint to ensure that the formularies were providing truthful information or to enable sales representatives to provide accurate information.

53.     Plaintiff also escalated this concern as set forth more fully below.

### *Plaintiff Reports Misconduct*

54.     On August 29, 2018, Plaintiff sent a letter to the HCV Business Conduct division of Gilead Sciences.

55.     In his letter, Plaintiff indicated, "I am writing to provide notice regarding my observation of several instances of conduct and activities that are contrary to Gilead Science Business Conduct requirements and potentially violate or risk violation of Federal and State laws."

56.     He further provided, "I understand my responsibility to report these concerns, however, I do so with a great deal of trepidation.  I accept my responsibility to report, however, I cannot envision any positive career outcome for having done so."

57.     Plaintiff then set forth the allegations of misconduct described above – selling the spread, direction to misappropriate trade secrets, and inaccurate sales data being provided to customers.

58.     Plaintiff made himself available to cooperate in any investigation and provide any additional information.

59.     In response thereto, an investigation was launched by Defendant's legal department into Plaintiff's claims, and Plaintiff participated in providing information incident to that investigation.

60.     Plaintiff identified both Mr. Vautier and Mr. Durr in the course of the investigation.

61.     Plaintiff encouraged Defendant to speak to the customers, and Defendant indicated it was not likely to engage in those conversations.

62.     In the course of the investigation, Plaintiff asked whether it was appropriate to engage in the conduct he outlined, and Defendant responded that it was not.

63.     Plaintiff did not receive any information from Defendant as to the outcome of the investigation, if any.

### *Defendant Retaliates Against Plaintiff for Reporting Misconduct*

64.     For years, Plaintiff had been an elite sales representative for Defendant, garnering numerous accolades and awards.  He routinely satisfied his sales goals.

65.     In 2017, the year prior to the complaint, he won the Senior Regional Directors award for productivity as having been in the top 20% of the company's sales force.

66.     From 2015-2017, Plaintiff received multiple quarterly contest awards for satisfying and/or exceeding sales goals.

67.     In 2017 and 2018, Plaintiff was appointed as a Regional Trainer, an appointment given to employees who have made significant contributions and evidence leadership in the workforce.

68.     The tenor of Defendant toward Plaintiff changed dramatically after his report of misconduct.

69.     After Plaintiff's complaint to Defendant's Business Conduct division, Plaintiff's supervisor, Mr. Vautier, met with Plaintiff and suddenly began raising issues concerning Plaintiff's performance.

70.     Mr. Vautier began micromanaging Plaintiff's performance which had been exemplary prior to the complaint.

71.     He offered that he would be willing to make Plaintiff's job difficult through various report requirements.

72.     The goal was to make the atmosphere so untenable that Plaintiff would be compelled to resign.

73.     Plaintiff quickly realized the actions as retaliation, as he was suddenly subjected to a myriad of tasks from Mr. Vautier that were previously not required.

74.     By way of example, Plaintiff was made to produce calendar reports to Mr. Vautier, and Plaintiff began receiving negative field contact reports despite having previously been commended for his work by Mr. Vautier.

75.     Mr. Vautier wanted to suggest Plaintiff was underperforming, but in 2018, as a result of a resignation of a Pittsburg North representative, Plaintiff was tasked with covering the vacancy as well as handling his own territory responsibilities.

76.     On December 28, 2018, Plaintiff again contacted Defendant's legal department to report that he was the subject of harassment and retaliation by management as a result of his reporting misconduct.

77.     As a consequence of Mr. Vautier's retaliation, Plaintiff requested either relocation or a new supervisor; Plaintiff's requests were denied.

78. Instead, Defendant informed Plaintiff that it determined his complaint of harassment and retaliation to be unsupported.

79. And yet, in another act of retaliation, after the complaint to Human Resources of harassment and retaliation by Mr. Vautier, Plaintiff was placed on a Performance Improvement Plan ("PIP") that was monitored and controlled by Mr. Vautier, the subject of Plaintiff's complaints.

80. Historically, Plaintiff's performance, as was the case with other sales representatives, was based upon sales goals.

81. In 2018, Plaintiff was satisfying his sales goals, and as a result, Mr. Vautier could not assert underperformance.

82. To justify his action in implementing the PIP, Mr. Vautier instead changed Plaintiff's performance metric to a market share analysis, a metric that had never been previously applied and, on information and belief, was not used to measure the performance of other sales representatives.

83. A market share analysis does not account for limits on market share created by factors outside the control of a Gilead salesperson.

84. The territory assigned to Plaintiff during the relevant time provided access to approximately 15% of the related drug use market.

85. By way of example, as a result of reimbursement issues that had arisen between UPMC and Gilead, and which are outside of the control of the salesperson, UPMC was directing its physicians not to use products offered by Gilead and ultimately removed Gilead from the formulary. UPMC physicians presented the bulk of Plaintiff's potential customers during this time period.

86.     As Defendant knew at the time, its hepatitis C market share was declining overall and in Plaintiff's territory was experiencing a disproportionately larger loss of market share as a direct result of that independent business dispute between UPMC and Gilead and over which Plaintiff had no control.

87.     Further, Mr. Vautier falsified documentation by indicating that Plaintiff was below average in frequency numbers, and he refused to amend the report after Plaintiff provided support for the incorrect data.

88.     Mr. Vautier also intentionally documented inaccurate numbers for Plaintiff's strategic approach to make it seem as though Plaintiff was underperforming when he was not.

89.     Mr. Vautier also penalized Plaintiff in the PIP for field time that was a result of Mr. Vautier's refusal to join Plaintiff in the field.

90.     Mr. Vautier also increased his micromanagement of Plaintiff by requiring:

    a.   Weekly updates to management;

    b.   Tracking of frequency of communications on a list of providers;

    c.   Utilizing alternative access opportunities such as educational speaker programs of approximately 3-4 events per week and provide weekly reports;

    d.   Discuss call average on a weekly basis;

    e.   Weekly e-mail report on the growth or decline in parity market opportunities and include an updated strategic plan for each, highlighting new access sites and appointments;

    f.   Provide a weekly routing document prior to entering the field each week;

    g.   30-minute calls every Friday for a progress update; and

    h.   Provide a minimum of a week's notice when a field day is built in to see at least 4-5 targets and 2-3 market development calls.

91.    Plaintiff complied with each of these obligations, and yet Mr. Vautier refused to acknowledge the same in his evaluation of the PIP.

92.    Instead, Mr. Vautier, by purposefully providing false and misleading information in the PIP, caused Plaintiff to be harmed in the terms and conditions of his employment.

93.    That conduct was ratified by Defendant when it refused to properly and thoroughly investigate Plaintiff's concerns of retaliation in good faith or consider Mr. Vautier's retaliatory intent in fashioning and reporting the PIP.

94.    Plaintiff was ultimately terminated for failing to satisfy the objectives of the PIP which largely focused on the basis of market share performance rather than the sales performance he was satisfying and the standard to which other sales representatives were held.

95.    Plaintiff was harmed in his professional reputation as it was rare for Defendant to terminate employment with a sales representative for performance because the sales data is unreliable and not easily tracked.

96.    To the extent sales data existed for Plaintiff, he was meeting all sales goals at that time.

97.    Defendant, therefore, concocted a false narrative concerning Plaintiff's performance to justify its unlawful termination.

## _Harm to Plaintiff_

98.    The conduct directed at Plaintiff was egregious.

99.     Plaintiff had an obligation to report the unlawful activity to management and, recognizing the risk it posed to him in his employment, he complied with that obligation.

100.     Plaintiff was requested to engage in conduct that, had he done so, positioned him for termination and possibly criminal and civil liability.

101.     The action requested by Defendant violated the law and its own internal policies.

102.     The action requested by Defendant violates its core tenant of employee integrity.

103.     Plaintiff reported the wrongful conduct, as required, and found himself placed on a track to termination, his pleas to Defendant concerning retaliation notwithstanding.

104.     The persons engaged in the wrongful conduct, on the other hand, remained fully employed.


## COUNT I

### Violation of Pennsylvania Whistleblower Act

105.     The above paragraphs are incorporated as though each paragraph were set forth fully herein.

106.     Pennsylvania enacted a statute to prohibit retaliatory efforts by employers in response to lawful employee complaints.  43 P.S. § 1421 *et seq.* ("Pennsylvania Whistleblower Act").

107.     The Pennsylvania Whistleblower Act provides, "No employer may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee or a person acting on behalf of the employee makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrongdoing or

waste by a public body or an instance of waste by any other employer as defined in this act."  43 P.S. § 1423(a).

108.    "Waste" is defined as "An employer's conduct or omissions which result in substantial abuse, misuse, destruction or loss of funds or resources belonging to or derived from Commonwealth or political subdivision sources."  43 P.S. § 1422 "Waste."

109.    "Wrongdoing" is defined as "A violation which is not of a merely technical or minimal nature of a Federal or State statute or regulation, of a political subdivision ordinance or regulation or a code of conduct or ethics designed to protect the interest of the public or the employer."  43 P.S. § 1422 "Wrongdoing."

110.    Defendant is subject to the Pennsylvania Whistleblower Act as it is a corporation for profit that receives money from a public body to perform work or provide services relative to the performance of work for or the provision of services to a public body.  43 P.S. § 1422 "Employer (4)."

111.    Pennsylvania's Whistleblower Act provides that the report may be made to the employee's superiors, an agent of the employer, or to any appropriate authority.  43 P.S. § 1424 (b).

112.    In this instance, Plaintiff made a report of wrongdoing and/or waste to his supervisors and Defendant's Business Conduct Department.  He subsequently participated in an interview conducted at the direction of Defendant's legal counsel.

113.     Plaintiff reported waste and/or wrongdoing as set forth above by providing support for allegations of managerial employees selling the spread on drugs and by demonstrating that Defendant's representatives were providing false information concerning drug coverage, both of which impact pharmaceuticals covered by Medicare and Medicaid.

114.    Plaintiff's conduct in both reporting and participating in an investigation into his report constitutes protected conduct under Pennsylvania's Whistleblower Law.

115.    Plaintiff's reports were acknowledged by Defendant as appropriate reports of misconduct, waste and/or wrongdoing.

116.    Defendant's actions, as set forth herein, were not separate and legitimate, nor were they merely pretextual.

117.    Plaintiff was the subject of retaliation directed at interfering and chilling his legally protected rights and for the purpose of making an example to other employees the consequence of advancing those legally protected rights.

118.    More specifically, Plaintiff was harmed in the retaliatory measures taken to undermine him in the performance of his job duties and ultimately in the termination of his employment as a result of his refusal to engage in conduct that violates his professional, ethical, and legal obligations.

119.    The conduct of Defendant serves to send a message to its employees that any pushback, even when required by law, will be met with adverse employment action.

120.    Defendant's conduct forces employees into a Hobson's choice in which they are forced to make decisions that can expose them to substantial civil, criminal, and professional liability.

121.    The termination of Plaintiff as a consequence of his refusal to break the law is outrageous and/or reckless conduct by Defendant.

122.    As a direct and proximate result of Defendant's unlawful conduct, Plaintiff was deprived of his job and has lost income in the form of wages, benefits, and future job opportunities.

18

123.     As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has

suffered noneconomic losses consistent with Pa.R.C.P. 223.3.

WHEREFORE, for the foregoing reasons, Plaintiff, JOHN DOE, requests that the Court

grant the relief prayed for hereinafter.

## COUNT II

## WRONGFUL DISCHARGE

124.     The above paragraphs are incorporated as though each paragraph were set forth

fully herein.

125.     Pennsylvania common law specifically prohibits termination of an employee

when such termination is contrary to an expressed public policy of the Commonwealth.

126.     In this case, a series of public policies are at the basis of Plaintiff's wrongful

discharge claim.

127.     First, the Pennsylvania Uniform Trade Secrets Act prohibits using "improper

means" to misappropriate a trade secret.  12 Pa.C.S. § 5301 *et seq.*

128.     "Improper means" includes misrepresentation and/or inducement of a breach of

duty to maintain secrecy."  12 Pa.C.S. §5302.

129.     Plaintiff was directed to steal UPMC's trade secrets and data, by intentionally

misleading UPMC, for Defendant's advantage in its negotiations with UPMC.

130.     Plaintiff was threatened with termination for refusing to comply with the

directive.

131.     When Plaintiff reported that threat, he faced retaliation and termination of his

employment.

132.    Importantly, theft of UPMC's trade secrets potentially subjected Plaintiff to substantial civil liability including monetary damages and exemplary damages correlated to the value of the proprietary information.  12 Pa.C.S. § 5304.

133.    Not only would Plaintiff have faced possible civil liability, but the conduct would have also constituted theft of trade secrets, a felony of the third degree.  18 Pa.C.S. § 3930.

134.    Second, an employer cannot require an employee to commit a crime nor can an employer prevent an employee from complying with a statutory duty.

135.    Pennsylvania's criminal code prohibits insurance fraud.  18 Pa.C.S. § 4117.

136.    In addition, Pennsylvania's Controlled Substances, Drug, Device, and Cosmetic Act expressly prohibits the dissemination or publication of any false or misleading advertisement as well as the furnishing of false or fraudulent material information in, or omissions of any material information from any application, report, or other document required to be kept or filed under the Act, or any record required to be kept by the Act.  35 P.S. § 780-113(3), (28).

137.    Pennsylvania's Controlled Substances, Drug, Device, and Cosmetic Act expressly prohibits the dissemination of the misinformation Plaintiff indicated was the consequence of inaccurate sales data provided by the Managed Care group.

138.    The response of Defendant was not to correct the inaccurate and false information contained within the formularies to comply with the law, but rather, to ignore the complaint by Plaintiff.

139.    Third, Pennsylvania prohibits false Medicare claims pursuant to 62 P.S. § 1407.

140.    More specifically, the statute makes it unlawful to "solicit or receive or to offer or pay any remuneration, including any kickback, bribe or rebate, directly or indirectly, in cash or in kind, from or to any person, in connection with the furnishing of services or merchandise for

which payment may be in whole or in part under the medical assistance program or in connection with referring an individual to a person for the furnishing or arranging for the furnishing of any services or merchandise for which payment may be made in whole or in part under the medical assistance program." 62 P.S. § 1407(a)(2).

141.    In addition, Pennsylvania's Medicaid Anti-Fraud Statute prohibits solicitation or receipt or offer of payment of any remuneration in connection with furnishing service or merchandise for which payment may be paid in whole or in part under Pennsylvania Medicaid. 62 Penn. State. § 1407(2).

142.    Both Pennsylvania's Medicare Fraud statute and Pennsylvania's Medicaid statute carry civil and criminal liability for violations.

143.    Plaintiff properly reported witnessing his supervisors "selling the spread" and/or "304b selling" which is expressly prohibited under the Medicare statute. 62 P.S. § 1407(a)(2).

144.    In each instance, Plaintiff was subjected to a pattern and practice of retaliatory conduct for properly reporting information.

145.    Plaintiff was the subject of retaliation directed at interfering and chilling his legally protected rights and for the purpose of making an example to other employees the consequence of advancing those legally protected rights.

146.    More specifically, Plaintiff was harmed in the retaliatory measures taken to undermine him in the performance of his job duties and ultimately in the termination of his employment as a result of his refusal to engage in conduct that violate his professional, ethical, and legal obligations.

147.    The conduct of Defendant serves to send a message to its employees that any pushback, even when required by law, will be met with adverse employment action.

148.    Defendant's conduct forces employees into a corner in which they are forced to make decisions that can expose them to substantial civil, criminal, and professional liability.

149.    The termination of Plaintiff as a consequence of his refusal to break the law is outrageous and/or reckless conduct by Defendant.

150.    As a direct and proximate result of Defendant's unlawful conduct, Plaintiff was deprived of his job and has lost income in the form of wages, benefits, and future job opportunities.

151.    As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered noneconomic losses consistent with Pa.R.C.P. 223.3.

152.    The conduct of Defendant was willful, wanton, outrageous and/or done in reckless disregard of the rights of Plaintiff, supporting an award of punitive damages.

WHEREFORE, for the foregoing reasons, Plaintiff, JOHN DOE, requests that the Court grant the relief prayed for hereinafter.


## <u>CONCLUSION</u>

WHEREFORE, for the foregoing reasons, Plaintiff, JOHN DOE, requests that the Court grant the following relief against the Defendant, in a sum in excess of the arbitration limits of the court, including but not limited to the following relief:

a)   Compensation for past and future lost wages;

b)   Compensation for past and future lost benefits;

c)   Actual damages;

d)   Noneconomic losses consistent with Pa.R.C.P. 223.3;

e)   General compensatory damages, including harm to reputation, as appropriate;

f)  Expert fees and other costs of suit;

g)  Attorney's fees;

h)  Punitive damages as appropriate; and

i)  Such further legal and equitable relief as this court deems just and proper.


**JURY TRIAL DEMANDED**                    Respectfully Submitted,

Vicki Kuftic Horne, Esq. (Pa. 36578)
Nicole Daller, Esq. (Pa. 312224)
Samantha Kovalyak, Esq. (Pa. 328175)

HORNE DALLER LLC
1380 Old Freeport Road, Suite 3A
Pittsburgh, PA 15238
Phone: (412) 967-9400
Fax: (412) 967-0465
vkhorne@hornedaller.com
ndaller@hornedaller.com
skovalyak@hornedaller.com

Attorneys for Plaintiff

## **VERIFICATION**

On behalf of and as legal counsel for JOHN DOE, I hereby affirm that I have obtained a signed verification from the Plaintiff swearing and affirming that the facts set forth in the foregoing Complaint in Civil Action are true and correct to the best of his knowledge or information and belief.  His statement was given subject to the penalties of 18 Pa.C.S. § 4904 relating to unsworn falsification to authorities.

Vicki Kuftic Horne, Esq. (Pa. 36578)

HORNE DALLER LLC
1380 Old Freeport Road, Suite 3A
Pittsburgh, PA 15238
Phone: (412) 967-9400
Fax: (412) 967-0465
vkhorne@hornedaller.com

Attorney for Plaintiff

24

## CERTIFICATE OF COMPLIANCE

I hereby certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial Systems of Pennsylvania: Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

Date:  November 30, 2021

Respectfully Submitted,

Vicki Kuftic Horne, Esq. (Pa. 36578)
Nicole Daller, Esq. (Pa. 312224)
Samantha Kovalyak, Esq. (Pa. 328175)

HORNE DALLER LLC
1380 Old Freeport Road, Suite 3A
Pittsburgh, PA 15238
Phone: (412) 967-9400
Fax: (412) 967-0465
vkhorne@hornedaller.com
ndaller@hornedaller.com
skovalyak@hornedaller.com

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Complaint was served by U.S. mail to

the individual named below on November 30, 2021:

W. John Lee, Esq.
Morgan Lewis & Brockius LLP
1701 Market Street
Philadelphia, PA 19103
w.john.lee@morganlewis.com

*Counsel for Defendant*

Respectfully Submitted,

Vicki Kuftic Horne, Esq. (Pa. 36578)
Nicole Daller, Esq. (Pa. 312224)
Samantha Kovalyak, Esq. (Pa. 328175)

HORNE DALLER LLC
1380 Old Freeport Road, Suite 3A
Pittsburgh, PA 15238
Phone: (412) 967-9400
Fax: (412) 967-0465
vkhorne@hornedaller.com
ndaller@hornedaller.com
skovalyak@hornedaller.com

Attorneys for Plaintiff

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| JOHN DOE, | ) | CIVIL DIVISION |
| | ) | |
| Plaintiff, | ) | Docket No. GD 20-002649 |
| | ) | |
| v. | ) | |
| | ) | **MOTION FOR ASSIGNMENT TO THE** |
| GILEAD SCIENCES, INC., | ) | **COMMERCE & COMPLEX** |
| | ) | **LITIGATION CENTER** |
| Defendant. | ) | |
| | ) | |
| | ) | Filed on Behalf of Plaintiff |
| | ) | |
| | ) | Counsel of Record for this Party: |
| | ) | Vicki Kuftic Horne, Esq. |
| | ) | Pa. I.D. #36578 |
| | ) | Nicole Daller, Esq. |
| | ) | Pa. I.D. #312224 |
| | ) | Samantha Kovalyak, Esq. |
| | ) | Pa. I.D. #328175 |
| | ) | |
| | ) | HORNE DALLER LLC |
| | ) | 1380 Old Freeport Rd., Suite 3A |
| | ) | Pittsburgh, PA 15238 |
| | ) | Phone: (412) 967-9400 |
| | ) | Fax: (412) 967-0465 |
| | ) | vkhorne@hornedaller.com |
| | ) | ndaller@hornedaller.com |
| | ) | skovalyak@hornedaller.com |
| | ) | |
| | ) | **JURY TRIAL DEMANDED** |

## NOTICE OF PRESENTATION

As Defendant does not object to this Motion, Plaintiff does not believe a hearing on the

attached Motion for Assignment to the Commerce and Complex Litigation Center is necessary.


*s/Vicki Kuftic Horne*
Vicki Kuftic Horne
Attorney for the Plaintiff

## CERTIFICATE OF SERVICE

Undersigned counsel certifies that a true copy of this motion was served on November

30, 2021, upon the following by e-mail as follows:


W. John Lee, Esq.
Morgan Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921
w.john.lee@morganlewis.com

*Counsel for Defendant*

*s/Vicki Kuftic Horne*
Vicki K. Horne, Esq. (Pa. 36578)
Nicole Daller, Esq. (Pa. 312224)
Samantha Kovalyak, Esq. (Pa. 328175)

HORNE DALLER LLC
1380 Old Freeport Road, Suite 3A
Pittsburgh, PA 15238
Phone: (412) 967-9400
Fax: (412) 967-0465
vkhorne@hornedaller.com
ndaller@hornedaller.com
skovalyak@hornedaller.com

*Counsel for Plaintiff*

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| JOHN DOE, | ) | CIVIL DIVISION |
| | ) | |
| Plaintiff, | ) | Docket No.:  GD-20-002649 |
| | ) | |
| v. | ) | |
| | ) | |
| GILEAD SCIENCES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MOTION FOR ASSIGNMENT TO THE COMMERCE AND COMPLEX LITIGATION CENTER

AND NOW, comes Plaintiff JOHN DOE, by and through his attorneys, Horne Daller LLC, and files this Motion for Assignment to the Commerce and Complex Litigation Center, the following of which is a statement:

1.　　　On November 30, 2021, Plaintiff filed a Complaint in Allegheny County's Court of Common Pleas seeking recourse for Defendant's Violation of the Pennsylvania Whistleblower Act and the wrongful discharge of his employment.

2.　　　Plaintiff's claim arises out of his employment with Defendant Gilead Sciences, Inc., a publicly traded foreign corporation with a principal place of business located at 333 Lakeside Drive, Foster City, California.

3.　　　Plaintiff was formerly an HCV Therapeutic Specialist for Defendant's "Pittsburgh South" territory.

4.　　　As an HCV Therapeutic Specialist, Plaintiff was responsible for pharmaceutical sales of Defendant's Hepatitis C medication throughout his region.

5.　　　Plaintiff's employment was terminated subsequent to his report of wrongdoing and/or waste by Defendant to his supervisors and Defendant's Business Conduct Department.

6.      Specifically, Plaintiff reported that Defendant engaged in a series of misconduct, which included, "selling the spread," also known as "340b selling", direction to misappropriate trade secrets, and inaccurate sales data being provided to customers.

7.      Plaintiff's termination was an act of retaliation against Plaintiff for reporting Defendant's misconduct and is contrary to express public policies of the Commonwealth, including the Pennsylvania Uniform Trade Secrets Act, insurance fraud, Pennsylvania's Controlled Substances, Drug, Device, and Cosmetic Act, Pennsylvania's Medicare Anti-Fraud statute, and Pennsylvania Medicaid statute.

8.      This case is appropriate for the Commerce and Complex Litigation Center given that it involves an employer-employee dispute, where the litigation involves complex factual or legal issues or will otherwise require extensive case management.[1]  (Commercial Litigation Rule A.2)

9.      This case is complex in that it includes an involved Whistleblower action, and will also require consideration of numerous statutes, including 12 Pa.C.S. § 5301 *et seq*; 18 Pa.C.S. § 3930; 18 Pa.C.S. § 4117; 35 P.S. § 780-113(3), (28); and 62 P.S. § 1407.

10.     Given the complexity of the legal issues presented and an out-of-state Defendant with a large global presence, assigning this case to the Commerce and Complex Litigation Center is consistent with the Center's objectives.

11.     Defendant does not object to assignment to the Commerce and Complex Litigation Center.

---

[1] Given that some of the claims involve trade secrets, it is anticipated that confidentiality issues may come before this Court.

WHEREFORE, Plaintiff respectfully requests the Court enter an Order assigning this matter to the Commerce and Complex Litigation Center accordingly.


Date:  November 30, 2021                    Respectfully submitted,

                                           *s/Vicki Kuftic Horne*
                                           Vicki K. Horne, Esq. (Pa. 36578)
                                           Nicole Daller, Esq. (Pa. 312224)
                                           Samantha Kovalyak, Esq. (Pa. 328175)

                                           HORNE DALLER LLC
                                           1380 Old Freeport Road, Suite 3A
                                           Pittsburgh, PA 15238
                                           Phone: (412) 967-9400
                                           Fax: (412) 967-0465
                                           vkhorne@hornedaller.com
                                           ndaller@hornedaller.com
                                           skovalyak@hornedaller.com

                                           *Counsel for Plaintiff*

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| JOHN DOE, | ) | CIVIL DIVISION |
| | ) | |
| Plaintiff, | ) | Docket No.:  GD-20-002649 |
| | ) | |
| v. | ) | |
| | ) | |
| GILEAD SCIENCES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## <u>ORDER OF COURT</u>

AND NOW, this _____day of _____, 2021, upon consideration of

the foregoing MOTION FOR ASSIGNMENT TO THE COMMERCE AND COMPLEX

LITIGATION CENTER filed by Plaintiff, it is hereby ordered that said Motion is **GRANTED**.

The above-captioned case shall be assigned accordingly.


_____J.


Cc:  All parties.

| | |
|---|---|
| **From:** | Kate Lesnick <lawoffice@hornedaller.com> |
| **Sent:** | Wednesday, December 1, 2021 11:10 AM |
| **To:** | Mary.Hicks@alleghenycourts.us; Lee, W. John; Robb, Caroline R. |
| **Cc:** | Vicki Kuftic Horne; Nicole Daller; Samantha Kovalyak |
| **Subject:** | John Doe v. Gilead Sciences, GD-20-2649 |
| **Attachments:** | 21 1130 COMPLAINT.pdf; 21 1130 PL Motion for Assignment.pdf |

[EXTERNAL EMAIL]
Court & Counsel,

Attached please find the Complaint and the Motion for Assignment which were filed with the Court in the above referenced matter on November 30, 2021.

Please let me know if you need anything further.

Thank you,

--
**Kate Lesnick**
**Paralegal**



1380 Old Freeport Road, Suite 3A
Pittsburgh, PA 15238-3127

412.967.9400
412.967.0465 (fax)

---
*This email is confidential and may be attorney-client privileged, attorney work product, or otherwise protected by law from unauthorized disclosure and dissemination. If you are not the intended recipient, do not read or disseminate this email. Contact the sender immediately to prevent further disclosure.*