IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN DOE,<br><br>                          Plaintiff,<br><br>     v.<br><br>GILEAD SCIENCES, INC.,<br><br>                          Defendant. | Civil Action No. 2:21-cv-01859-NR |

**MEMORANDUM OF LAW IN SUPPORT OF
<u>DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT</u>**

**I.      INTRODUCTION**

Plaintiff John Doe ("Plaintiff") was formerly employed as a pharmaceutical sales representative with Defendant Gilead Sciences, Inc. ("Gilead"). He claims Gilead terminated his employment in retaliation for an internal complaint he made about his supervisors and other sales representatives engaging in alleged unlawful sales practices. Plaintiff acknowledges that Gilead's legal department investigated his concerns and that Gilead terminated him because of his poor performance and failure to satisfy the objectives of a performance improvement plan.

Nevertheless, Plaintiff filed this lawsuit to assert a statutory claim for retaliation under the Pennsylvania Whistleblower Law ("PWL") and a common law claim for wrongful discharge. And while he now claims to be a whistleblower, Plaintiff filed this lawsuit anonymously as "John Doe" without any valid basis, which suggests he wants to hide the fact that he was terminated for poor performance. By doing so, his Complaint violates the most basic procedural requirement to identify the parties. The Complaint's failure to identify Plaintiff alone warrants dismissal.

The Complaint should be dismissed for the additional reason that it fails to state a claim upon which relief can be granted. Plaintiff's claim under the PWL fails because he has not—and

cannot—show that Gilead is an "employer" within the meaning of this statute. The law applies only to public employers, and Gilead is a private company. There are no factual allegations in the Complaint that would render Gilead a public employer within the meaning of this statute. Moreover, nothing in the Complaint shows that Plaintiff made a report of Gilead engaging in "waste" within the meaning of the statute, which requires a showing of substantial misuse or abuse of *public* funds belonging to the Commonwealth of Pennsylvania.

As for the common law wrongful discharge claim, the Complaint pleads no basis for any of the limited public policy exceptions to Pennsylvania's strong presumption of at-will employment. None of the statutes cited by Plaintiff required him to report violations or prohibited a company from terminating an employee for reporting such violations. As a result, to state a viable claim for wrongful discharge, Plaintiff must point to factual allegations that, if true, show Gilead terminated his employment for refusing to commit a crime. He fails to do so and, instead, relies on a statutory provision that imposes only *civil* liability. Thus, Plaintiff cannot overcome the presumption of at-will employment, and his wrongful discharge claim fails as a matter of law.

In sum, the Complaint should be dismissed with prejudice because it is procedurally defective and fails to state any plausible claims for relief.

## II.   RELEVANT FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY[1]

In October 2015, Gilead hired Plaintiff to be a Therapeutic Specialist responsible for pharmaceutical sales of Hepatitis C medications throughout the Southern Pittsburgh area. *See* ECF Doc. 1-1, Complaint ("Compl.") at ¶¶ 15, 16. In August 2018, Plaintiff allegedly sent a letter to the Hepatitis C Business Conduct Division to report three purported concerns. *Id.* at ¶¶ 54, 55. First, he claims that he reported concerns about his supervisors purportedly "selling customers on

---

[1] Gilead accepts the allegations in the Complaint as true—as it must under Rule 12(b)(6)—only for purposes of this Motion.

the financial benefits of Gilead products . . . covered by Medicare and Medicaid. . . ." *Id.* at ¶ 27. Second, Plaintiff allegedly reported concerns about his supervisors purportedly directing him to "acquire [an] internal and confidential" memo from University of Pittsburgh Medical Center ("UPMC") that described "the protocols physicians [were] supposed to follow in treating Hepatitis C" and "how the competitor's drugs were being used." *Id.* at ¶¶ 31-32, 34-35. Third, Plaintiff allegedly reported concerns about sales representatives purportedly providing customers with inaccurate information relating to insurance coverage of medications. *Id.* at ¶¶ 47, 48.

Upon receiving Plaintiff's complaint, Gilead's legal department launched an investigation into his concerns. *See* Compl. at ¶ 59. According to Plaintiff, after he participated in that investigation, his manager began "micromanaging" him and raising concerns about Plaintiff's performance. *Id.* at ¶¶ 69-70. As a result, in December 2018, Plaintiff contacted Gilead's legal department to report his manager for allegedly harassing and retaliating against him. *Id.* at ¶ 76. Gilead, however, did not substantiate Plaintiff's concerns and notified him accordingly. *Id.* at ¶ 78.

Plaintiff claims that his manager further retaliated against him by placing him on a performance improvement plan ("PIP") and continuing to micromanage his performance in a variety of different ways—*e.g.*, requiring weekly updates, tracking the frequency of his communications with health care providers, and holding a weekly one-on-one progress meeting. *Id.* at ¶¶ 79, 87, 88, 90. Then, in August 2019, "Plaintiff was ultimately terminated for failing to satisfy the objectives of the PIP[.]" *Id.* at ¶ 94.

On February 17, 2020, Plaintiff filed a Praecipe for Writ of Summons against Gilead in the Allegheny County Court of Common Pleas. *See* ECF Doc. 1-1 at 2. Nearly two years later, on November 30, 2021, Plaintiff filed a Complaint anonymously as a "John Doe" alleging Gilead

terminated his employment in violation of the PWL and Pennsylvania public policy. *See* Compl. at ¶¶ 105-152. Gilead timely removed the action to this Court on the basis of diversity jurisdiction (ECF Doc. 1) and now moves to dismiss the Complaint for failure to identify Plaintiff and for failure to state a claim upon which relief can be granted.

### III.    LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). To have the requisite "facial plausibility," a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

These facts cannot be mere "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," and the Court need not credit a plaintiff's "bald assertions" or "legal conclusions." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (a plaintiff may not rest merely on "labels and conclusions" or a "formulaic recitation of the elements of a cause of action"). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). While the Court should accept factual allegations as true, allegations that are "no more than conclusions . . . are not entitled to assumption of truth." *Santiago v. Warminster Twp.*, 629 F.3d 121, 131 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 680). In sum, this pleading standard "demands more than an unadorned, the defendant-unlawfully harmed-me accusation." *Iqbal*, 556 U.S. at 678.

IV.  **ARGUMENT**

    A.  **The Court Should Strike The Complaint Because Its Failure To Identify Plaintiff By Name Is Procedurally Improper.**

As a preliminary matter, the Complaint is defective in a simple—yet critical—procedural aspect: that is, it fails to identify Plaintiff by name.[2] To preserve the public nature of judicial proceedings, Rule 10 requires parties to identify themselves in their respective pleadings. Fed. R. Civ. P. 10(a); *see also* Pa. R. Civ. P. 1018 (requiring that caption of complaint "set forth . . . the names of all parties"). "[A] plaintiff's use of a pseudonym runs afoul of the public's common law right to access judicial proceedings." *Doe v. Megless*, 654 F.3d 404, 408 (3d Cir. 2011), *cert. denied*, 565 U.S. 1197 (2012). Accordingly, courts tend to allow a plaintiff to proceed anonymously only in exceptional cases of a highly sensitive and personal nature, such as those "involving abortion, birth control, transsexuality, mental illness, welfare rights of illegitimate children, AIDS, and homosexuality." *Id.* (citation omitted).

No such circumstances are present here. Plaintiff brings a routine employment retaliation claim, and there is nothing exceptional about his claim that warrants Plaintiff proceeding anonymously.[3] Indeed, courts routinely find that the threat of "embarrassment or economic harm" is not sufficient to justify proceeding anonymously. *Id.*; *see also Doe v. Guess, Inc.*, No. 5:20-CV-4545, 2020 WL 5905440, at *4 (E.D. Pa. Oct. 6, 2020) (denying plaintiff's motion to proceed

---

[2]  Plaintiff has indicated that he intends to file an amended complaint to remove the John Doe designation. As of the filing of this Motion, however, he has not yet done so.

[3]  Notably, Plaintiff seeks to conceal his own identity but does not hesitate to make public allegations of misconduct against his supervisors and Gilead—all identified by name. *See Doe v. Ct. of Common Pleas of Butler Cty. PA*, No. CV 17-1304, 2017 WL 5069333, at *3 (W.D. Pa. Nov. 3, 2017) (noting that "[i]f Plaintiff were permitted to proceed anonymously, Defendants 'would be placed at a serious disadvantage, for [they] would be required to defend [themselves] publicly while plaintiff could make her accusations from behind a cloak of anonymity'").

under pseudonym on discrimination claims against former employer); *Doe v. Main Line Hosps., Inc.*, No. CV 20-2637, 2020 WL 5210994, at *5 (E.D. Pa. Sept. 1, 2020) (same); *K.W. v. Holtzapple*, 299 F.R.D. 438, 442 (M.D. Pa. 2014) (finding no compelling circumstances where only harm alleged was potential "embarrassment in front of peers and professors along with the possibility of denial of future employment benefits"); *Doe v. Temple University*, No. 14-04729, 2014 WL 4375613, *2 (E.D. Pa. 2014) (holding that the plaintiff's fear of being unable to attend medical school is not considered an "exceptional circumstance" for anonymity and noting that many similarly situated plaintiffs have proceeded with litigation); *Doe v. Care One, LLC*, No. CV173451, 2021 WL 4428579, at *2 (D.N.J. Sept. 27, 2021) (granting motion to dismiss and noting that a "broad assertion of possible economic loss, without more, is insufficient to show severe harm or serious injury" warranting anonymity).

Absent a showing that his interest in anonymity outweighs the public's strong interest in knowing the true identity of the parties, Plaintiff must identify himself by name in the caption of the Complaint. Because he has failed to do so, his Complaint does not comply with Rule 10(a) and should be dismissed. *See* Fed. R. Civ. P. 41(b) (providing that failure to comply with court rules is a ground for involuntary dismissal).

      **B.**      **The Complaint Fails To State A Cognizable Claim Under The PWL.**

The PWL prohibits an "employer" from retaliating against an employee who "makes a good faith report or is about to report . . . to the employer or appropriate authority an instance of wrongdoing or waste by a public body *or* an instance of waste by any other employer as defined in [the] act." 43 P.S. §1423(a) (emphasis added). Plaintiff's PWL claim should be dismissed because: (1) he failed to plead facts showing that Gilead is an "employer" under the PWL, (2) he failed to allege facts showing that he made an actionable report of "waste" by Gilead, and (3) several of the alleged retaliatory acts in the Complaint are time barred.

1. *Plaintiff fails to plead factual allegations sufficient to show Gilead is an "employer" subject to liability under the PWL.*

Plaintiff's PWL claim fails as a matter of law because Gilead is not an "employer" subject to the law's provisions. The PWL defines a covered "employer" as either "[a] public body or [a private employer] which receives money from a public body to perform work or provide services relative to the performance of work for or the provision of services to a public body." 43 P.S. § 1422; *see also Vasil v. Dep't of Mil. & Veterans Affs.*, 230 A.3d 529, 532 n.2 (Pa. Commw. Ct. 2020) (citation omitted) (noting that the PWL is "chiefly a remedial measure intended to 'enhance openness in government and compel the government's compliance with the law by protecting those who inform authorities of wrongdoing'").

Gilead is a private-sector biopharmaceutical company. *See* Gilead Sciences, Inc., Annual Report (Form 10-K) (Feb. 25, 2021) (available at https://investors.gilead.com/static-files/53554664-ab61-43cb-aef0-2a8683c88ecd).[4] Gilead is not a public body, and the Complaint contains no factual allegations that suggest otherwise. Instead, Plaintiff offers nothing more than a conclusory allegation that Gilead is subject to the PWL because "it is a corporation for profit that receives money from a public body to perform work or provide services relative to the performance of work for or the provision of services to a public body." *See* Compl. at ¶ 110 (quoting 43 P.S. §1422). But this type of conclusory allegation is insufficient to establish that a private employer is deemed a public employer for purposes of the PWL. *See, e.g.*, *Westawski v. Merck & Co.*, No. 14-

---

[4] Courts within the Third Circuit routinely take judicial notice of SEC filings and consider them in resolving motions to dismiss. *See In re NAHC Securities Litigation*, 306 F.3d 1314 , 1331 (3d Cir. 2002) (upholding lower court's decision to take judicial notice of "documents filed with the SEC, but not relied upon in the Complaint"); *McCullough v. Advest, Inc.*, No. CV 17-407, 2017 WL 3675787, at *3 (W.D. Pa. Aug. 25, 2017) (taking judicial notice of public SEC filings and considering them in ruling on motion to dismiss); *Quigley v. E. Bay Mgmt., Inc.*, No. CIV.A. 13-3998, 2014 WL 2765076, at *1 (E.D. Pa. June 18, 2014) (noting that court may consider matters of public record, including SEC filings, without converting a motion to dismiss to a motion for summary judgment).

3239, 2015 WL 463949, at *11 (E.D. Pa. Feb. 4, 2015) (dismissing PWL claim where complaint merely stated that "Defendant [ ] qualifies as a 'public employer' for purposes of the Pennsylvania Whistleblower Act because Defendant receives a substantial amount of public funds, both state and federal"); *see also Payne v. Woods Servs., Inc.*, 520 F. Supp. 3d 670, 678 (E.D. Pa. 2021) (dismissing PWL claim where "Plaintiff ha[d] only alleged the legal conclusion that Defendants are a 'public body' and provided no further supporting facts"); *Mwimbwa v. CSL Plasma, Inc.*, No. CV 19-4626, 2020 WL 6118767, at *5 (E.D. Pa. Oct. 15, 2020) (dismissing claim where plaintiff "fail[ed] to include any allegations from which the Court could conclude that they are covered by the PWL").

    Although Plaintiff seems to suggest (without actually alleging) that Gilead receives public funds through Medicare and Medicaid, this is insufficient to render Gilead an employer under the PWL. To the extent Gilead's drugs are covered by Medicare or Medicaid, nothing in the Complaint suggests the government actually reimburses Gilead. *Contra* 42 U.S.C. § 1396(a)(32) (requiring that, with limited exceptions, state Medicaid plans must prohibit payment for care or services to anyone other than the individual receiving such care or service or "the person or institution providing such care or service"). And, while the Complaint does not allege that Gilead accepts Medicaid or Medicare funds directly, such an allegation would still not render Gilead a "public body" for purposes of the PWL. *See Grim v. May Grant Assocs.*, No. CV 18-2231, 2019 WL 358520, at *4 (E.D. Pa. Jan. 29, 2019) (concluding that "private entities who accept Medicaid or Medicare funding do not fall into the definition of "public body" under the PWL); *Eaves-Voyles v. Almost Fam., Inc.*, 198 F. Supp. 3d 403, 409 (M.D. Pa. 2016) (concluding that, to allow Medicaid or Medicare funding sufficient to render private employer a "public body" under PWL would "unreasonably expand the scope of the [PWL] beyond the legislature's intent by virtue of

government assistance programs meant to benefit individuals as opposed to private business entities"); *Lomaskin v. Siemens Med. Sols. USA, Inc.*, 820 F. App'x 138, 141 (3d Cir. 2020) (recognizing that "federal district courts in Pennsylvania have consistently concluded that a private entity does not qualify as a public body merely because it receives state funds through contracts with public programs or government agencies"). Simply put, Plaintiff has offered no factual allegations to render Gilead an "employer" subject to the PWL.

> 2. *Plaintiff fails to allege facts sufficient to show that he reported "waste" within the meaning of the PWL.*

To establish that he engaged in activity protected by the PWL, Plaintiff must show he made a report of "waste," which is defined as "substantial abuse, misuse, destruction or loss of funds or resources *belonging to or* derived from the Commonwealth or political subdivision sources." 43 P.S. § 1422 (emphasis added). In other words, Plaintiff had to report conduct that involved the misuse of funds belonging to Pennsylvania or one of its political subdivisions. At the pleading stage, allegations of theoretical waste are not enough. For example, in *Grim*, the Court found that the plaintiff failed to adequately plead a PWL claim where she "baldly state[d] that Medicare and Medicaid funds were wasted but d[id] not plead sufficient factual matter to allow the Court to conclude this result [was] plausible." *Grim*, 2019 WL 359520, at *6. Here, like in *Grim*, the Complaint contains no factual allegations showing that Plaintiff reported any conduct involving the misuse of Pennsylvania's funds. Rather, Plaintiff alleges he reported concerns about alleged sales practices of his supervisors and other Gilead sales representatives. *See* Compl. at ¶ 112. For instance, Plaintiff alleges he reported to Gilead that his supervisors were utilizing an "unlawful sales pitch" to market the financial benefits of Gilead products covered by Medicare and Medicaid (*id.* at ¶¶ 24, 29), but Plaintiff does not assert any factual allegations to articulate how these alleged sales practices resulted in misuse of funds belonging to Pennsylvania. Because there are no factual

9

allegations linking the complained-of conduct to actual misuse of funds belonging to the Commonwealth, there is no basis to find Plaintiff made a protected report of waste. His PWL claim should be dismissed for this additional reason.

### 3. *Plaintiff's PWL Claim is Partially Time-Barred.*

Plaintiff cannot state a timely PWL claim based on any conduct other than his termination. The PWL has a 180-day statute of limitations that is strictly construed to apply to each discrete act of retaliation. *See* 43 P.S. § 1424(a); *see also O'Rourke v. Pennsylvania Dep't of Corr.*, 730 A.2d 1039, 2014 (Pa. Cmwlth. 1999) (stating that the timeline under the PWL is mandatory and cannot be extended by the courts); *Titterton v. Jenkintown Borough*, No. CV 20-5869, 2021 WL 2823077, at *10 (E.D. Pa. July 7, 2021) (stating that only retaliatory adverse actions that occurred within 180 days of filing date are actionable under PWL); *McCall v. Butler Health Sys./Butler Mem'l Hosp.*, No. CIV.A. 13-130, 2013 WL 6253417, at *7 (W.D. Pa. Dec. 4, 2013) (holding that "demotion, failure to train, poor reviews based on false allegations, and retaliation" are each discrete adverse actions subject to applicable statute of limitations). Plaintiff filed his writ of summons with the Allegany Court of Common Pleas on February 17, 2020, which means that any alleged adverse actions that occurred before August 21, 2019 are time barred. Although Plaintiff's termination on August 23, 2019 falls within the limitations period, all of the other alleged acts of retaliation (*e.g.*, the June 2019 PIP, "micromanagement" of his work in 2018 and 2019) do not. Thus, Plaintiff's claims based on any acts of retaliation other than his termination are, therefore, untimely.[5]

---

[5] Likewise, these other alleged acts of retaliation are also not actionable on Plaintiff's wrongful discharge claim. Pennsylvania does not recognize a common law cause of action for retaliation based on anything other than termination. *See Hoshak v. Sysco Food Servs. of Pittsburgh, LLC*, No. 06-176, 2008 WL 2944609, at *7 (W.D. Pa. July 28, 2008) ("This Court has not

### C. Plaintiff Fails to State A Plausible Claim for Common Law Wrongful Discharge.

Pennsylvania law contains a strong presumption of at-will employment. *See McLaughlin v. Gastrointestinal Specialists, Inc.*, 750 A.2d 283, 287 (Pa. 2000). Courts applying Pennsylvania law carefully carved out a narrow exception to this presumption "in the most limited of circumstances where the termination implicates a clear mandate of public policy in this Commonwealth." *Id.; see also Weaver v. Harpster*, 975 A.2d 555, 563 (Pa. 2009) (holding that "exceptions to at-will employment should be few and carefully sculpted so as not to erode an employer's inherent right to operate its business as it chooses"). A termination violates public policy when an employer: (1) prevents the employee-plaintiff from complying with a statutorily imposed duty; (2) terminates the employee-plaintiff when a statute expressly prohibits doing so; or (3) requires the employee-plaintiff to engage in criminal activity. *Zorek v. CVS Caremark Corp.*, No. 1:13-CV-1949, 2014 WL 12487695, at *3 (M.D. Pa. Apr. 16, 2014).

Here, Plaintiff claims that Gilead's decision to terminate his employment was contrary to the public policy set forth in (i) the Medicaid Fraud Act, 62 P.S. § 1407; (ii) 18 P.S. § 4117, which criminalizes insurance fraud; (iii) the Controlled Substance Act, 35 P.S. § 780-113, which prohibits the dissemination or publication of false information on controlled substances; (iv) the PUTSA, 12 Pa.C.S. § 5301, *et seq.*, which imposes civil liability for misappropriation of trade secrets; and (v) 18 Pa.C.S. § 3930, which criminalizes theft of trade secrets. *Id.* at ¶¶ 127-143. None of the cited laws are sufficient to overcome the presumption of at-will employment.

First, nothing in the Complaint suggests that Gilead prevented Plaintiff from complying with a statutory duty or obligation. In other words, none of the statutes cited by Plaintiff required

---

found…any Pennsylvania appellate cases recognizing a common law cause of action for retaliation based upon anything but wrongful discharge.").

11

him to report the conduct he raised in his August 2018 complaint. *See, e.g.*, *Field v. Philadelphia Electric Co.*, 565 A.2d 1170, 1180 (Pa. Super. 1989) (finding public policy exception where employee discharged for making a report required by Federal Nuclear Regulatory Commission).

Second, none of these statutes prohibit an employer from terminating an employee who reports a violation. *See, e.g.*, *Kroen v. Bedway Sec. Agency, Inc.*, 633 A.2d 628, 631 (Pa. Super. Ct. 1993) (finding public policy exception where employer terminated employee for failing to submit to a polygraph test where a statute prohibited employers from so requiring).

Third, Gilead did not require Plaintiff to engage in any criminal conduct.[6] Critically, Plaintiff's subjective belief about the criminality of the conduct is irrelevant. *Martinez v. Rapidigm, Inc.*, No. CV-02-1106, 2007 WL 965899, at *16 (W.D. Pa. Mar. 29, 2007) (quoting *Clark v. Modern Grp., Ltd.*, 9 F.3d 321, 332 (3d Cir. 1993)), *aff'd*, 290 F. App'x 521 (3d Cir. 2008); *see also Difiore v. CSL Behring, U.S., LLC*, 171 F. Supp. 3d 383, 389-90 (E.D. Pa. 2016), *aff'd sub nom.*, 879 F.3d 71 (3d Cir. 2018). He must allege facts sufficient to show the conduct he was directed to commit actually constitutes a crime. *Id.*

In an attempt to do so, Plaintiff alleges that Gilead directed him to obtain an alleged trade secret from UPMC "by intentionally misleading UPMC" into providing him with a document that identified "a treatment algorithm that describes the protocols physicians are supposed to follow in treating Hepatitis C" and "how the competitor's drug was being used." *See* Compl. at ¶¶ 34-35. To support his claim, Plaintiff cites a provision of the PUTSA that prohibits misappropriation by "improper means" (i.e., "misrepresentation"). *Id.* at ¶ 128. But the cited PUTSA provision imposes

---

[6] The first two instances of alleged criminal conduct—*i.e.*, "selling the spread" and use of inaccurate Fingertip Formularies—are clearly not actionable. Nowhere in the Complaint does Plaintiff allege Gilead required *Plaintiff* to personally engage in either practice. Rather, he claims only to have been aware of such alleged practices by his supervisors or other coworkers and that Plaintiff reported them. *See* Compl. at ¶¶ 27-30, 46.

only *civil* liability; and, by its very terms, the PUTSA "does not affect . . . criminal remedies" for misappropriation. 12 Pa.C.S. § 5308. Although Pennsylvania law does criminalize trade secret theft, it does not criminalize misappropriation by "improper means" and, instead, only prohibits misappropriation by "unlawful means," such as threats of force or violence or trespass. *See* 18 Pa.C.S. § 3930.[7] The Complaint makes no reference to any conduct that would implicate the criminal provision set forth in 18 Pa.C.S. § 3930.

Plaintiff cannot premise his wrongful discharge claim on 18 Pa.C.S. § 3930 for an additional reason: the Complaint fails to plead facts showing the information at issue was a trade secret. Under 18 Pa.C.S. § 3930(e), a "trade secret" is "scientific or technical information, design, process, procedure, formula or improvement which is of value and has been specifically identified by the owner as of a confidential character, and which has not been published or otherwise become a matter of general public knowledge." 18 Pa.C.S. § 3930(e). Here, Plaintiff claims that his supervisors directed him to obtain an internal UPMC memo describing how providers should treat Hepatitis C. Yet, UPMC published this information on their website, stating that they treat HCV with (1) "interferon, given by injection;" (2) "[r]ibavirin, given orally;" or (3) a "[c]ombination of interferon and ribavirin."[8] *See, e.g.*, *Somat Corp. v. Combs*, 40 Pa. D. & C.2d 107, 114 (Pa. Com. Pl. 1966) (concluding that information published in company's sales literature is not trade secret). Thus, even assuming the truth of all allegations in the Complaint, the conduct at issue did not amount to a criminal violation of 18 Pa.C.S. §3930.

---

[7] Specifically, 18 Pa.C.S. § 3930 provides that a person commits a felony in the second degree if he unlawfully takes a trade secret by force or violence, threat of force or violence, or through trespass and commits a felony in the third degree if he "unlawfully obtains" possession of or access to a trade secret with the intent to misappropriate it. 18 Pa.C.S. § 3930(a), (b).

[8] UPMC, *Hepatitis C Treatment*, https://www.upmc.com/services/liver-cancer/conditions/hepatitis-c#treatment (last accessed December 9, 2021).

In sum, Plaintiff has not alleged any facts sufficient to overcome the strong presumption of at-will employment, and so the Complaint fails to state a plausible claim for wrongful discharge.

## V. CONCLUSION

For these reasons, Gilead respectfully requests that this Court grant its Motion and dismiss the Complaint for failure to state a viable claim for relief or, alternatively, for failure to comply with Rule 10(a).

DATE: December 30, 2021

Respectfully submitted,

*/s/  Caroline R. Robb*
W. John Lee, Esquire (PA ID No. 206796)
Caroline R. Robb, Esquire (PA ID No. 326176)
**MORGAN, LEWIS & BOCKIUS LLP**
1701 Market St.
Philadelphia, PA 19103
(T): (215) 963-5000
(F): (215) 963-5001
w.john.lee@morganlewis.com
caroline.robb@morganlewis.com

*Counsel for Defendant,*
*Gilead Sciences, Inc.*

## **CERTIFICATE OF CONFERRAL**

I hereby certify that, prior to filing Defendant's Motion to Dismiss Plaintiff's Complaint, counsel for Defendant Gilead Sciences, Inc. attempted in good faith to confer with counsel for Plaintiff John Doe regarding the curable defect in the Complaint (its failure to comply with Rule 10(a)). We also raised with Plaintiff the uncurable defects in the Complaint. Plaintiff's counsel responded only as to the Rule 10(a) issue and indicated that Plaintiff would be filing an amended complaint to remove the John Doe designation, but they had not yet done so as of the deadline for Defendant's responsive pleading.

<i>Caroline R. Robb</i><br>
Caroline R. Robb

## CERTIFICATE OF SERVICE

    I hereby certify that on this 30th day of December 2021, I caused a true and correct copy of the foregoing MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT to be served via this Courts ECF system on the following counsel of record:

Vicki K. Horne, Esq.
Horne Daller LLC
1380 Old Freeport Road, Suite 3A
Pittsburgh, PA 15238
vkhorne@hornedaller.com

                                                          *Caroline R. Robb*
                                                          Caroline R. Robb