IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BLASE TUCCI, | ) |
| | ) |
| Plaintiff, | ) 2:21-CV-1859-NR |
| | ) |
| v. | ) |
| | ) |
| GILEAD SCIENCES, INC., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM ORDER

Plaintiff Blase Tucci claims Defendant Gilead Sciences, his former employer, wrongfully terminated his employment for reporting potentially unlawful conduct by his managers at Gilead, in contravention to the Pennsylvania Whistleblower Law (Count 1) and the Pennsylvania Uniform Trade Secrets Act (Count 2). ECF 8; ECF 35. Gilead moved to dismiss Mr. Tucci's complaint in its entirety (ECF 13), and this Court granted that motion as to Count 1 only. ECF 30. The Court specifically held that Mr. Tucci failed to plead sufficient facts detailing the flow of funds from the Commonwealth to Gilead—a necessary element to qualify Gilead as either a "public body" or an "employer" subject to the Whistleblower Law. *Id.* at 1. However, the Court granted Mr. Tucci leave to amend to add additional details that would establish Gilead as an employer under the Whistleblower Law. ECF 30, p. 1. Mr. Tucci filed a second amended complaint (ECF 35), and Gilead again moved to dismiss Count 1 on the same grounds as in its first motion to dismiss (ECF 13). ECF 36; ECF 37, pp. 5-6. This time, the Court will deny Gilead's motion.

The Whistleblower Law makes it unlawful for a covered employer to discharge an employee for making a good faith report of "wrongdoing or waste by a public body or an instance of waste by any other employer as defined in this act." 43 Pa. Stat. § 1423(a). To make a *prima facie* case of wrongful termination and survive the motion-

to-dismiss stage, Mr. Tucci must plead sufficient facts under the standard of *Twombly* and *Iqbal*[1] that Gilead is an "employer,"[2] or more precisely in Gilead's case, a "corporation for profit" that "receives money from a public body to perform work or provide services relative to the performance of work for or the provision of services to a public body[.]" *Id.* at § 1422.

There are two steps in determining whether Gilead is an employer. First, the Court must determine whether UPMC is a "public body," which the Whistleblower Law defines in relevant part as: "Any other body which is created by Commonwealth or political subdivision authority or which is funded in any amount by or through Commonwealth or political subdivision authority or a member or employee of that body." *Id.* Second, if the Court concludes UPMC is a public body, it must then decide whether Gilead is an "employer"—which, as noted above, means a "corporation for profit" that "receives money from a public body to perform work or provide services relative to the performance of work for or the provision of services to a public body." *Id.*

With respect to the first step, the Court finds that the second amended complaint sufficiently alleges that UPMC is a "public body" because it receives Commonwealth funds through the Medicaid Rebate and 340B Reimbursement programs—that is, UPMC is "funded in any amount by or through Commonwealth . . . authority." *Id.*; ECF 35, ¶¶ 36-47, 62. While there has been significant litigation

---

[1] The Court accepts as true all well-pleaded allegations in Mr. Tucci's second amended complaint and construes all reasonable inferences in his favor, as it must. *Bright v. Westmoreland Cnty.*, 380 F.3d 729, 735 (3d Cir. 2004).

[2] Mr. Tucci states in a footnote of his opposition brief that the second amended complaint also pleads that Gilead qualifies as a "public body," but the Court sees no well-pleaded allegations in the second amended complaint to support this allegation.

(and split decisions) over whether a recipient of Medicaid funds is a "public body," the Court finds that the better authority on the issue supports Mr. Tucci's position.

State and federal courts in Pennsylvania have long debated the "Medicaid issue," and the Supreme Court of Pennsylvania has not directly addressed it. *Gloukhova v. CSL Behring LLC*, No. 22-2223, 2022 WL 16722314, at *3 (E.D. Pa. Nov. 4, 2022) (discussing cases). So in the absence of a mandate from the state's highest court, this Court "predict[s] how that court would decide [the] issue." *Winterberg v. Transp. Ins. Co.*, 72 F.3d 318, 321-22 (3d Cir. 1995). Recent caselaw, including from the Pennsylvania intermediate courts, establishes that a healthcare provider's receipt of Medicaid funds from the Commonwealth in any amount makes it a "public body." *E.g.*, *Saltzman v. Thomas Jefferson Univ. Hosps., Inc.*, 166 A.3d 465, 475 n.8 (Pa. Super. Ct. 2017) ("This Court has held that an entity that receives Medicaid funding is a 'public body' for purposes of the Whistleblower Law." (citation omitted)); *Heckman v. UPMC Wellsboro*, No. 20-1680, 2021 WL 2826716, at *19 (M.D. Pa. July 7, 2021); *Harrison v. Health Network Labs. Limited P'ships*, No. 365 EDA 2018, 2018 WL 6520982, at *4 n.6 (Pa. Super. Ct. Dec. 12, 2018), *aff'd*, 232 A.3d 674, 677 (Pa. 2020); *Gratz v. Ruggiero*, No. 16-3799, 2017 WL 2215267, at *7 (E.D. Pa. May 19, 2017); *Denton v. Silver Stream Nursing & Rehab. Ctr.*, 739 A.2d 571, 576 (Pa. Super. Ct. 1999). The Court finds these cases persuasive and predictive of how the Pennsylvania Supreme Court would apply the Whistleblower Law today. *Gloukhova*, 2022 WL 16722314, at *6 ("It is therefore reasonable to predict that when faced with this question, the Supreme Court of Pennsylvania would find that Medicaid or Medicare funding alone is sufficient to justify liability under the [Whistleblower Law]."); *see Winterberg*, 72 F.3d at 321-22 (In predicting how the

Pennsylvania Supreme Court would rule, courts "must also give due deference to decisions of the lower Pennsylvania courts.").

Given that conclusion, the Court proceeds to step two of the analysis, and finds that Gilead, a private corporation, is an "employer" under the Whistleblower Law by its unambiguous terms because it received money from UPMC, a public body. 43 Pa. Stat. § 1422; *Heckman*, 2021 WL 2826716, at *19 (private medical clinic was an "employer" because "it receives money from [public body] North Penn in exchange for the provision of services").

Gilead challenges this plain-language reading of the Whistleblower Law as too expansive. It argues that Gilead only serves as a "conduit" for indirect receipt of Medicaid and Medicare funds, and that if such indirect recipients are "employers," then the Whistleblower Law "would apply to any private entity that does business with a recipient of Commonwealth funds." ECF 37, p. 8. There are at least two problems with Gilead's argument.

First, Gilead may be right that the statute is too expansive, but that appears to be a feature of the law, not a bug. The plain meaning of the text and the legislative history confirms as much. *See Romer v. MHM Health Pros.*, No. 20-1275, 2020 WL 6747418, at *5 (M.D. Pa. Nov. 17, 2020) ("The operative phrase in § 1422's definition of 'public body' plainly includes any entity receiving funds coming from or passing through the Commonwealth."); *Gloukhova*, 2022 WL 16722314, at *5 ("[T]he Pennsylvania legislature indicated its contrary intent in 2014 by amending the definition of an employer to additionally include the 'performance of work for or the provision of services to a public body' in addition to the 'public body' 'funded' category of an employer." (cleaned up)).

Second, in this case, the expansive scope of the statute is less of a concern. This is so because Mr. Tucci blew the whistle at Gilead for alleged practices concerning the sale and marketing of Medicaid-program drugs. ECF 35, ¶ 135 ("Mr. Tucci

reported waste and/or wrongdoing as set forth above by providing support for allegations of managerial employees selling the spread on drugs and by demonstrating that Gilead's representatives were providing false information concerning drug coverage, both of which impact pharmaceuticals covered by Medicare and Medicaid."). In other words, there is a connection or relationship here between Mr. Tucci's complaints and the Medicaid funds it receives through the sale of its drugs. Again, the legislative history sheds some light on this; as stated by the Eastern District of Pennsylvania in *Gratz*, "legislative history makes clear" that the Whistleblower Law's coverage "include[s] employees of companies that are ***performing services for public bodies with public monies***." 2017 WL 2215267, at \*7 (emphasis added) (cleaned up). The limiting principle is evident: employees of private companies that touch the same Commonwealth funds as the public body— here, UPMC—receive whistleblower protection. And at this stage, with all inferences drawn in his favor, Mr. Tucci has adequately alleged that Gilead is such a company.

The cases that Gilead cites do not alter this conclusion.[3] *See* ECF 37, pp. 8-9. As thoroughly and persuasively explained in *Gloukhova*, Gilead's two supporting cases rely on *Cohen v. Salick Health Care*, 772 F. Supp. 1521 (E.D. Pa. 1991), to reach their conclusions. 2022 WL 16722314, at \*4-5 (E.D. Pa. Nov. 4, 2022). But *Cohen* only addressed a prior, more restrictive version of the Whistleblower Law, and Pennsylvania state courts now reject *Cohen* as inapposite. *See Denton*, 739 A.2d at

---

[3] *Grim v. May Grant Assocs.*, No. 18-2231, 2019 WL 358520 (E.D. Pa. Jan. 29, 2019*)*; *Lomaskin v. Siemens Med. Sols. USA, Inc.*, 820 F. App'x 138 (3d Cir. 2020). In these cases, the courts found that an entity must receive specifically appropriated Commonwealth funds from a public body to qualify as an employer. *See Lomaskin*, 820 F. App'x at 141 (finding that "the federal district courts in Pennsylvania have consistently concluded that a private entity does not qualify as a public body merely because it receives state funds through contracts with public programs or government agencies," and that "'public body' refers to money 'specifically appropriated by a governmental unit.'" (citing *Grim*, 2019 WL 358520 at \*4)).

576 (drawing a "different conclusion" from *Cohen* and concluding the Whistleblower "Law clearly indicates that it is intended to be applied to bodies that receive not only money appropriated ***by*** the Commonwealth, but also public money that passes ***through*** the Commonwealth." (emphasis in original)); *Gloukhova*, 2022 WL 16722314, at *5-6.[4] "Because Pennsylvania's intermediate appellate court decisions are strong indicators of how the Pennsylvania Supreme Court would rule—and because *Denton* is both consistent with the plain language of the statute and has been favorably cited by later Pennsylvania decisions," this Court follows the lead of other courts that have addressed this issue and rejects the *Cohen* approach. *Gloukhova*, 2022 WL 16722314, at *6.[5]

Gilead also moves to dismiss Count 1 on grounds that Mr. Tucci only reported an instance of "wrongdoing" but was required to report an instance of "waste." ECF

---

[4] The Court declines to follow the Third Circuit's decision in *Lomaskin*, as that case was a non-binding opinion that did not consider *Denton* or any other Pennsylvania state-court decision addressing the Medicaid issue. The Court is not alone in this regard—other federal courts have likewise declined to follow *Lomaskin* in reaching the same conclusion as this Court. *E.g.*, *Gloukhova*, 2022 WL 16722314, at *6; *Heckman*, 2021 WL 2826716, at *18-19; *Romer*, 2020 WL 6747418, at *5 (finding persuasive the fact that "the Pennsylvania Superior Court itself has twice cited *Denton* favorably after the statute was amended").

[5] Mr. Tucci raises additional arguments that Gilead is an "employer" by virtue of the direct receipt of public funds from the Commonwealth. But the second amended complaint actually supports the opposite conclusion—that Gilead pays the Commonwealth as part of the Medicaid Rebate program, or avoids paying the Commonwealth anything by participation in the 340B Reimbursement program. ECF 35, ¶¶ 36-38, 38 n.9. Nor is Mr. Tucci's allegation that Gilead is an employer through the receipt of taxpayer dollars for research and development sufficient to survive the pleading standard. ECF 35, ¶ 10. The Whistleblower Law makes clear that a private entity must receive state, not federal, dollars to fall under the Law's ambit. *See, e.g.*, *Wang v. Univ. of Pittsburgh*, No. 20-1952, 2021 WL 6051568, at *23 (W.D. Pa. Dec. 21, 2021) (Horan, J.) ("If the entity is funded through the state, the funding must come from the Commonwealth or political subdivision or authority—not a federal source." (cleaned up)). Mr. Tucci's only specific allegation on this point refers to federal funding. ECF 35, ¶ 10 n.2. To the extent that allegation is meant to refer to state funding, it is conclusory and unsupported by specific facts and so does

37, pp. 9-10. That claim is contrary to the terms of the Whistleblower Law, which requires a report of either wrongdoing or waste—not both. 43 Pa. Stat. § 1424(b) ("An employee alleging a violation of this act must show by a preponderance of the evidence that, prior to the alleged reprisal, the employee . . . had reported or was about to report in good faith . . . an instance of wrongdoing *or* waste to the employer or an appropriate authority." (emphasis added)); *see Heckman*, 2021 WL 2826716, at *20 (a plaintiff "may show either waste *or* wrongdoing" to make a *prima facie* case (emphasis in original)); *Johnson v. Res. for Hum. Dev., Inc.*, 789 F. Supp. 2d 595, 601 (E.D. Pa. 2011) (*prima facie* case under the Whistleblower Law requires a report of wrongdoing or waste). Because Mr. Tucci has alleged that he reported "wrongdoing," he has sufficiently stated a claim.

\* \* \*

Therefore, after careful consideration, it is hereby **ORDERED** that Gilead's partial motion to dismiss (ECF 36) is **DENIED**.

DATED: February 21, 2023               BY THE COURT:

/s/ *J. Nicholas Ranjan*
United States District Judge

---

not survive the pleading standard. *Santiago v. Warminster Twp.*, 629 F.3d 121, 131 (3d Cir. 2010) (allegations that are "no more than conclusions are not entitled to the assumption of truth" (cleaned up)).