## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BLASE TUCCI, | ) |
| | ) |
| Plaintiff, | )    2:21-CV-1859-NR |
| | ) |
| v. | ) |
| | ) |
| GILEAD SCIENCES, INC., | ) |
| | ) |
| Defendant. | ) |

### <u>MEMORANDUM ORDER</u>

Before the Court is Plaintiff Blase Tucci's motion to compel Defendant Gilead Sciences to respond to discovery requests and provide materials from two internal Gilead investigation files: one related to Mr. Tucci's complaints about improper business conduct (the August 2018 investigation) and the other related to Mr. Tucci's complaints about retaliation against him (the December 2018 investigation). ECF 62. Mr. Tucci claims that these files contain relevant, non-privileged materials, but that Gilead has asserted a blanket privilege over them and provided an inadequate privilege log. *Id.* at 4-9. Gilead has withdrawn its claim of privilege for the December 2018 investigation, but maintains that the materials in the August 2018 investigation file are not relevant to Mr. Tucci's claims and are otherwise protected by the attorney-client privilege and work-product doctrine. ECF 65, p. 2-4. After careful consideration, the Court agrees with Mr. Tucci, and finds that Gilead's categorical assertion of privilege over a relatively small universe of documents to be improper. Thus, for the reasons that follow, the Court **GRANTS** Mr. Tucci's motion.

Mr. Tucci is entitled to discovery that is relevant, non-privileged, and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). The Court begins with relevance, but some background is in order. The second amended complaint alleges that Mr. Tucci reported misconduct to Gilead's legal department in August 2018, and

that Gilead's legal department launched an investigation into this misconduct.  ECF 35, ¶¶ 89-98.  As part of that report, Mr. Tucci provided Gilead's legal department the names of his supervisors who he alleged were involved, including Harry Durr and Brian Vautier.  *Id.*, ¶ 95.  Mr. Tucci alleges that he was retaliated thereafter by these supervisors, including through unjustifiably negative performance reviews.  *Id.*, ¶¶ 99-132.

Based on this, the Court finds that the August 2018 investigation and associated file documents are clearly relevant.  Those documents can go to pretext, which is part of a plaintiff's *prima facie* whistleblower claim.  *Javitz v. Luzerne Cnty.*, No. 85 MAP 2021, 2023 WL 3263481, at *6, *11 (Pa. May 5, 2023).  For example, if Gilead discovered that Mr. Tucci's report was meritorious, it might have provided a motive to retaliate.  Also, if Gilead conveyed certain information to Mr. Tucci's supervisors as part of this investigation (which can be plausibly inferred from the second amended complaint (ECF 35, ¶¶ 103-110)), Mr. Tucci could connect some of the causal dots between his report and their mistreatment of him.  That, in turn, could cast doubt on the performance-based reasons for Mr. Tucci's termination.  Thus, the August 2018 investigation and related file are relevant.

The next question is whether the August 2018 report and file is privileged.  On this question, it's important to distinguish between the final report itself and "the file" (*i.e.*, documents, witness statements, and the like that were reviewed as part of the investigation).[1]

Taking Gilead's in-house counsel at her word, the August 2018 report was prepared by in-house counsel to provide advice to the company.  ECF 65-1, ¶ 5.  This

---

[1] The discovery dispute here concerns the "final report" from the August 2018 investigation conducted for the purpose of providing legal advice to Gilead, and the "[f]ile from [that] investigation by in-house counsel into Plaintiff's August 2018 Business Conduct Report."  ECF 63-1.  From those files, Mr. Tucci seeks "all non-privileged documents contained in the investigative files, including witness

is clearly protected from disclosure by the attorney-client privilege and work-product doctrine. *Serrano v. Chesapeake Appalachia, LLC*, 298 F.R.D. 271, 280 (W.D. Pa. 2014) (Cercone, J.) (applying Pennsylvania law and concluding that investigative report conducted by counsel into wrongful death incident and "related communications involving its content and/or the application of the assessments and strategies advanced by [counsel] . . . are protected by the attorney-client privilege"); *see also United States v. Amerada Hess Corp.*, 619 F.2d 980, 986 (3d Cir. 1980) ("Legal advice or opinion from an attorney to his client, individual or corporate, has consistently been held by the federal courts to be within the protection of the attorney-client privilege.").

The investigative file, though, requires a more nuanced analysis. Gilead invoked both attorney-client privilege and work-product protection over these documents. The attorney-client privilege, which in this diversity case is controlled by Pennsylvania law,[2] "operates in a two-way fashion to protect confidential client-to-attorney or attorney-to-client communications made for the purpose of obtaining or providing professional legal advice." *Gillard v. AIG Ins. Co.*, 15 A.3d 44, 59 (Pa. 2011). The privilege applies to corporations and extends to communications between corporate employees (regardless of their position) and counsel when the communications "are kept confidential and when they are made at the behest of counsel and with the goal of furthering counsel's provision of legal advice to the client,

---

statements, communications with witnesses, the identity of witnesses interviewed as part of each investigation, documents collected for purposes of the investigations, and draft documents prepared as part of the investigations by non-legal counsel and which do not reflect attorney-client communications[.]"  ECF 63, p. 10.

[2] That said, the Court notes that "the Third Circuit and the state of Pennsylvania apply the same test in evaluating the attorney client privilege." *Nesselrotte v. Allegheny Energy, Inc.*, No. 06-1390, 2008 WL 2858401, at *4 (W.D. Pa. July 22, 2008) (Fischer, J.) (citations omitted).

the corporation." *Custom Designs & Mfg. Co. v. Sherwin-Williams Co.*, 39 A.3d 372, 379 (Pa. 2012).  That said, "the privilege obstructs the truth-finding process and is to be construed narrowly.  The privilege protects only those disclosures—necessary to obtain informed legal advice—which might not have been made absent the privilege." *Serrano v. Chesapeake Appalachia, LLC*, 298 F.R.D. 271, 281 (W.D. Pa. 2014) (cleaned up).  "The showing necessary to establish the privilege is settled: (1) When legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his insistence permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived." *Id.* (cleaned up).

The work-product doctrine, codified in Federal Rule of Civil Procedure 26(b), "is designed to protect material prepared by an attorney acting for his client in anticipation of litigation.  In contrast, the doctrine does not protect documents prepared in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other non-litigation purposes." *Id.* at 277 (cleaned up).

Because Gilead invokes both protections over the August 2018 investigation materials, it must show either that the contents are communications made from client to counsel or counsel to client in confidence and for the purpose of obtaining legal advice, or that the contents were prepared in anticipation of litigation and not in the ordinary course of business. *Id.* at 276-77, 281.  It has done neither.  Instead, it asserts a blanket privilege over the entire investigation file simply because the materials underly the investigation.  ECF 65, p. 12.

That argument misses the mark because it stretches the privilege too wide. The law is clear that "[w]hat are protected in most instances . . . are the communications themselves.  Documents sent to or prepared by counsel incorporating such information for the purpose of obtaining or giving legal advice, planning trial strategy, etc. are protected from compelled disclosure." *Andritz Sprout-Bauer, Inc. v.*

*Beazer E., Inc.*, 174 F.R.D. 609, 633 (M.D. Pa. 1997). But "[a] party may not refuse to disclose facts simply because that information came from a lawyer." *Servis One, Inc. v. OKS Grp. Int'l Pvt. Ltd.*, No. 20-CV-4661, 2021 WL 5882101, at *14 (E.D. Pa. Dec. 13, 2021) (cleaned up). In fact, both the attorney-client privilege and work-product doctrine carve out discovery of purely factual material from documents that might otherwise receive privilege protection. *See Hickman v. Taylor*, 329 U.S. 495, 511 (1947) (Where "relevant and non-privileged facts remain hidden in an attorney's file and where production of those facts is essential to the preparation of one's case, discovery may properly be had."); *Andritz Sprout-Bauer*, 174 F.R.D. at 632-33 ("To the extent that purely factual material can be extracted from privileged documents without divulging privileged communications, such information is obtainable.").

Similarly, the mere fact that counsel reviewed material as part of an investigation conducted for the purpose of providing legal advice does not of itself subject that material to protection. *Patel v. Kensol-Franklin, Inc.*, No. 14-1439, 2016 WL 1109874, at *5 (M.D. Pa. Mar. 22, 2016) ("Simply because the photographs are part of the investigation report does not entitle them to protection under either the attorney-client privilege or the work-product doctrine."); *LaVeglia v. TD Bank, N.A.*, No. 2:19-1917, 2020 WL 127745, at *4 (E.D. Pa. Jan. 10, 2020) (documents that "do not implicate any communications with counsel" or "do not include legal advice that was given" are not privileged).

Rather, the materials are protected only where they reflect communications made for the purpose of obtaining legal advice or were prepared by an attorney in anticipation of litigation. *See LaVeglia*, 2020 WL 127745, at *4 (privilege required redaction of email chain relating to discussions with counsel about prospect of litigation but could otherwise be produced); *Smith v. Unilife Corp.*, No. 13-5101, 2015 WL 667432, at *3 (E.D. Pa. Feb. 13, 2015) (draft SEC Form 10-K reports were privileged to the extent the drafts contained legal advice and communications

between counsel and client).  By characterizing the file contents as privileged by virtue of their presence in the file, and not by their actual content, Gilead has failed to meet its burden.  *Reynolds v. Slippery Rock Univ.*, No. 18-1571, 2021 WL 796029, at *5 (W.D. Pa. Mar. 2, 2021) (Fischer, J.) ("[C]laims of privilege must be asserted document by document, rather than as a single, blanket assertion." (cleaned up)).

Gilead attempts to draw a distinction between "purely factual information" and "underlying facts" that are the subject of a "privileged investigation" to justify its blanket privilege.  ECF 65, pp. 11, 12 n.5.  Disclosing those "underlying factual" materials, it argues, would "necessarily reveal counsel's thought process and opinions, which are protected by the privilege."  ECF 65, p. 11 (citation omitted).  But that distinction is tantamount to covering up the facts "simply because that information came from a lawyer."  *Servis One, Inc.*, 2021 WL 5882101, at *14.  Indeed, if Gilead were correct, then the privilege would prevent disclosure of a (hypothetical) smoking gun email between two non-legal counsel employees that indisputably proved Mr. Tucci's termination was pretextual—merely because in-house counsel reviewed the email as part of its investigation.  Both the attorney-client privilege and work-product doctrine "will not protect against the disclosure of underlying facts or protect clients from factual investigations."  *Abraham v. Phillips*, 287 A.3d 848, *4 (Pa. Super. Ct. 2022) (cleaned up), *appeal denied*, No. 311 EAL 2022, 2023 WL 3087342 (Pa. Apr. 26, 2023); *Polansky v. Exec. Health Res., Inc.*, No. 12-4239, 2018 WL 1964195, at *3 (E.D. Pa. Apr. 26, 2018) ("Defendant cannot preclude discovery on these <u>facts</u> merely because they were the topic of privileged communications or attorney work product." (emphasis in original)).

In sum, Gilead cannot invoke a blanket privilege over the investigation file, and must produce responsive non-privileged documents from the file, or otherwise

provide a log that identifies, by document, which specific documents are being withheld and the basis for withholding them.[3]

Additionally, to the extent that the log (or answers to Mr. Tucci's discovery requests) reveals the identities of individuals who were interviewed or gave witness statements as part of the investigation, that information is not protected and must be logged or produced.

Gilead argues that the identity of witnesses might be work-product protected. The Court disagrees. *See In re Auto. Refinishing Paint Antitrust Litig.*, No. MDL 1426, 2006 WL 1479819, at *5 (E.D. Pa. May 26, 2006) (collecting cases and concluding that while witness or interviewee lists "may provide a remote clue as to the nature and scope of [a party's] investigation, their substantive work product content is minimal. In producing this information, [the party] need not reveal any of the details of the interactions that occurred or the mental impressions, conclusions, legal theories, or opinions drawn therefrom."); *see also Amerada Hess*, 619 F.2d at 987-88 (list of interviewees "is of rather minimal substantive content, and presents none of the classic dangers to which the *Hickman v. Taylor* rule is addressed.").

But even if the identities of interviewees were covered by the work-product doctrine, the Court finds that there is a "substantial need" to produce this information, triggering an exception to the doctrine. *Serrano*, 298 F.R.D. at 276. That is because knowledge of the investigation by certain individuals at the company—specifically, Mr. Dunn and Mr. Vautier—is of critical relevance, given that

---

[3] The Court is also not convinced that a privilege review of the file documents (about 2,900 documents) is so burdensome as to allow Gilead to escape its obligations to create a specific privilege log. *See Northwood Nursing & Convalescent Home, Inc. v. Cont'l Ins. Co.*, 161 F.R.D. 293, 299 (E.D. Pa. 1995) (compilation of privilege log for "hundreds" of documents, "most of which are privileged," not unduly burdensome, especially as compared to "17 million potentially privileged documents").

the claim here is that Mr. Tucci was retaliated against for reporting misconduct to the legal department, and communications about the investigation may be evidence that Mr. Tucci's supervisors knew of his report. *See In re Plastics Additives Antitrust Litig.*, No. 03-2038, 2007 WL 9825891, at *2 (E.D. Pa. Feb. 28, 2007) (list of witnesses "is discoverable upon a minimal showing" of need).[4]

\*     \*     \*

Therefore, after careful consideration and consistent with the foregoing, it is hereby **ORDERED** that Mr. Tucci's motion to compel responses to discovery (ECF 62) is **GRANTED**.  Gilead shall respond to the disputed discovery requests and produce responsive non-privileged documents from the investigative file **within 21 days of this order**, along with a privilege log.[5]

DATED: May 22, 2023                              BY THE COURT:

                                                 /s/ *J. Nicholas Ranjan*
                                                 United States District Judge

---

[4] Gilead cites *Utesch v. Lannett Co.*, No. 16-5932, 2020 WL 7260775, at *7 (E.D. Pa. Dec. 9, 2020), for the assertion that such a list is protected by the attorney-client privilege.  ECF 65, pp. 11-12. The Court does not read *Utesch* for that holding, but is otherwise not persuaded by it, since a list of names is not a communication. *Utesch*, 2020 WL 7260775, at *4 ("The attorney-client privilege protects: (1) a communication (2) made between privileged persons (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client." (cleaned up)).

[5] While a close call, the Court finds that Gilead's position on the motion was, in part, "substantially justified," and so it will not award Mr. Tucci its attorneys' fees as part of the motion.