## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BLASE TUCCI, | ) | |
| | ) | |
| | ) | 2:21-CV-1859-NR |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GILEAD SCIENCES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

### ORDER

Before the Court is Plaintiff Blase Tucci's motion to compel (ECF 86) Defendant Gilead Sciences to respond to certain written discovery requests and produce witnesses for additional depositions. The Court **GRANTS** the motion in part and **DENIES** the motion in part.

**I.    Mr. Tucci's requests for written discovery.**

**A.    Communications to or from Mr. Tucci.**

Mr. Tucci seeks production of communications between him and in-house counsel for Gilead, which were logged on Gilead's privilege log. Based on the Court's review of the privilege log, these documents were appropriately withheld, and so the request is **DENIED**.

The attorney-client privilege applies to corporations and extends to communications between corporate employees (regardless of their position) and counsel when the communications "are kept confidential and when they are made at the behest of counsel and with the goal of furthering counsel's provision of legal advice to the client, the corporation." *Custom Designs & Mfg. Co. v. Sherwin-Williams Co.*, 39 A.3d 372, 379 (Pa. 2012).

Mr. Tucci was an employee of Gilead at the time these communications were made, so communications between him and in-house counsel are privileged. Further,

Gilead's privilege log is detailed enough to allow the Court to determine the privileged nature of the documents, so there is no need for Gilead to produce the communications. *Fisher v. Erie Ins. Exch.*, 258 A.3d 451, 465 (Pa. Super. Ct. 2021) (no production required where "privilege logs were precise enough to leave no question as to the applicability of privilege"). Accordingly, Mr. Tucci's request is denied as to the communications outlined in Exhibit 2.[1]

> **B.    Documents provided to Gilead.**

**Email attachments**. Mr. Tucci seeks production of attachments to emails identified in Gilead's privilege log. Though an email communication may be privileged, an attachment is not necessarily privileged simply because it was included in the email or because counsel may have reviewed it during a privileged investigation. Gilead may only refuse to provide an attachment if there is an independent basis of privilege over the document.

As to the non-privileged email attachments (Exhibit 2, items 42, 43, 55, 67, 113, 218), Mr. Tucci's request is **DENIED** as moot, as Gilead says it has produced all non-privileged attachments. ECF 91, p. 6.

As to privileged email attachments identified in Exhibit 2, Gilead provided privilege log entries for the attachments identified at items 27, 40, 51, 72, 188, 190, 192, 201, which gave enough detail for the Court to conclude that those documents are privileged. But Gilead failed to do so for items 20, 22, 24, 102, 106, 120, 205, 207. Thus, for items 20, 22, 24, 102, 106, 120, 205, 207, the motion is **GRANTED** insofar as Gilead must supplement its privilege log. If the privilege log sufficiently reflects

---

[1] Since Gilead is invoking privilege as a "shield" here, it cannot then rely on those communications as a "sword" in a future motion or at trial. *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 222 (3d Cir. 2006) ("[W]e remind the parties that the attorney-client privilege cannot be used as both a 'shield' and a 'sword[.]'").

that an independent basis for the privilege exists for these attachments, then Gilead need not produce them.  Otherwise, those documents must be produced.

**Vendor documents**.  Mr. Tucci seeks production of communications between Gilead and KPMG.  Mr. Tucci's request is **DENIED**.  Gilead retained KPMG to conduct e-discovery for its investigation into the August 2018 complaint.  The Court discerns no reason why Gilead would communicate with KPMG except to assist as an agent of the investigation.  That doesn't destroy the privilege and is otherwise not relevant to any claims or defenses.

**C.      Facts or information provided to Gilead.**

**Privileged communications "contain[ing] facts or non-privileged information."**  Mr. Tucci seeks production of the very thing that the attorney-client privilege protects—privileged communications themselves.  *See* ECF 72, pp. 4-5 (quoting *Andritz Sprout-Bauer, Inc. v. Beazer E., Inc.*, 174 F.R.D. 609, 633 (M.D. Pa. 1997)).  The privilege does not shield facts from discovery but precludes discovery of those facts via privileged attorney-client communications.  The request is **DENIED**.

**Memoranda memorializing witness interviews**.  Mr. Tucci requests production of witness interview memoranda.  Memoranda of witness interviews can be discoverable in some cases, depending on whether they are "fact" work product or "opinion" work product.[2]  The former is discoverable "upon a showing of substantial need and by demonstrating that one cannot otherwise obtain the substantial

---

[2] Though Gilead refers to these documents as seeking communications protected by the attorney-client privilege, the work-product doctrine is likely the more applicable protection.  "To qualify as work product, the material must satisfy a three-part test detailed in Rule 26(b)(3).  The material must be (1) documents or tangible things, (2) prepared in anticipation of litigation or for trial, (3) by or for another party or by or for that other party's representative.  Generally, documents created as part of an internal investigation, such as the one at issue in this case, are considered to be made in anticipation of litigation for the purposes of the work product doctrine." *Lafate v. Vanguard Grp., Inc.*, No. 13-5555, 2014 WL 5023406, at *6 (E.D. Pa. Oct. 7, 2014) (cleaned up).

equivalent of such materials without undue hardship." *Farkas v. Rich Coast Corp.*, No. 14-272, 2016 WL 6618076, at *3 (M.D. Pa. Nov. 9, 2016) (cleaned up). "Courts have held substantially verbatim witness statements contained in interview memoranda that have not been sharply focused or weeded by an attorney to be fact rather than opinion work product." *Wiedeman v. Canal Ins. Co., H&F Transfer, Inc.*, No. 15-4182, 2016 WL 6080908, at *1 (N.D. Ga. Oct. 18, 2016) (cleaned up). Opinion work product, "which consists of mental impressions, conclusions, opinions, or legal theories of an attorney, is afforded almost absolute protection and it is discoverable only upon a showing of rare and exceptional circumstances." *Farkas*, 2016 WL 6618076, at *3 (cleaned up). "Whether such material is discoverable typically will turn on whether the witness or other party who provided counsel with the factual information is available to be deposed." *Id.*

Mr. Tucci's request for these memoranda is **DENIED**. As reflected in the privilege log, these memoranda are opinion work product, so the heightened standard of need applies. Mr. Tucci has not shown that rare and exceptional circumstances require production of these materials.

**D.    Additional discovery disputes (ECF 92, pp. 14-15).**

**Investigation policies, procedures, and guidelines.** Mr. Tucci seeks discovery about the Employee Relations department's policies, procedures, and guidelines for conducting investigations. Gilead asserts that "investigation guidelines" for the Employee Relations department and Business Conduct Unit are not relevant because they are "not responsible for conducting internal investigations." The Court infers that Mr. Tucci doesn't mean an "investigation" in the same sense that in-house counsel would conduct an internal investigation, but believes that these units likely have procedures for understanding complaints and determining information about those complaints in the ordinary course of business, before a formal legal investigation is initiated. That is a reasonable request relevant to Mr. Tucci's

claims.  Even so, Gilead says it has turned over these documents, so the request is **DENIED**.

**Similar business conduct complaints**.  Mr. Tucci's request is **DENIED**. Gilead represented that there were no other complaints "made about Brian Vautier or Harry Durr" and is unaware of any other documents on this point.  ECF 93, p. 5. So Gilead's discovery obligation about this request is complete.

**Performance reviews and related documents concerning Ms. Gallagher**.  Mr. Tucci's request is **DENIED**.  Gilead produced this information, so this dispute is moot.

## II.    Mr. Tucci's request to re-open depositions.

### A.    Brian Vautier.

Mr. Tucci's request is **DENIED**.  An assertion of privilege doesn't shield facts from disclosure but does protect the disclosure of privileged communications about those facts.  In deposing Mr. Vautier, Mr. Tucci asked questions specifically designed to get at the content of privileged communications.  For example, Mr. Tucci asked, "Did you provide any facts or information about selling the spread [to in-house counsel]?" and "What information did you communicate [to in-house counsel]?"  If the questions were phrased differently (and they may have been at other points of the deposition), certain of the underlying facts could have been disclosed.  But the specific questions identified in the motion to compel seek the content of communications between in-house counsel and Mr. Vautier.  So, as asked, it was proper for counsel for Gilead to instruct Mr. Vautier not to answer these specific questions.

### B.    Harry Durr.

Mr. Tucci's request is **GRANTED.**  The Court had ruled that Mr. Durr's knowledge about the investigation into Mr. Tucci's complaint is relevant and even

central to Mr. Tucci's claims.  ECF 73, pp. 7-8.  The questions below, which were asked during Mr. Durr's deposition by Mr. Tucci's counsel, targeted that information:

- Were you interviewed concerning the UPMC memo and/or denials?
- At any point in 2018, were you interviewed about communications you had with UPMC concerning 340B pricing?
- The conversations concerning the preference of Mavyret, or was it something different?
- Were the allegations involving the preference of Mavyret and denials of Gilead drugs, or was it something else?

ECF 87, p. 12.  Mr. Durr could have answered these questions without divulging the content of attorney-client communications, as they basically ask for his personal understanding of the allegations and whether he was or was not interviewed about them.  Though Mr. Tucci's counsel could not ask follow-up questions about the substance of any conversations between Mr. Durr and in-house counsel, counsel was entitled to establish Mr. Durr's knowledge and awareness, even if Mr. Durr became aware through counsel.  In other words, the fact that Mr. Durr might know something, even if he learned about it through counsel, is not in and of itself protected by privilege.

Accordingly, the Court orders Mr. Durr to supplement his responses to the above questions.  This does not need to be done through an additional deposition, as it appears likely from the context of the deposition transcript that the information above was discussed during an interview with counsel, and so further follow-up as to the substance of the conversations is privileged.  As such, Mr. Durr need only provide a sworn written declaration, which responds to the above questions.  Additionally, as part of this declaration, Mr. Durr must indicate whether he learned this information solely through an interview by in-house counsel, or whether someone other than counsel interviewed him or had conversations with him about these matters.  If it is

the latter, then the Court finds there would be a basis to re-open Mr. Durr's deposition to inquire further about such an interview.

### C.    Rule 30(b)(6) designee Robb McFadden.

Mr. Tucci's request is **GRANTED**.  Rule 30(b)(6) does "not require absolute perfection" of a corporate representative but "requires a good faith effort on the part of the designate to find out the relevant facts—to collect information, review documents, and interview employees with personal knowledge just as a corporate party is expected to do in answering interrogatories." *Yerkes v. Weiss*, No. 17-2493, 2019 WL 12056384, at *4 (D.N.J. Sept. 30, 2019) (citation omitted).

Additionally, a plaintiff "is entitled to discover relevant facts and non-privileged information" from a Rule 30(b)(6) witness. *Parker v. Atl. City Bd. of Educ.*, No. 15-8712, 2017 WL 11466008, at *2 (D.N.J. Mar. 7, 2017).  Even in the context of a Rule 30(b)(6) deposition, "[t]he privilege does not protect facts communicated to an attorney.  Deponents cannot refuse to disclose facts which their attorneys conveyed to them and which the attorneys obtained from independent sources." *United States v. Geiser*, No. 04-1184, 2005 WL 8174484, at *2 (W.D. Pa. Oct. 7, 2005) (Cercone, J.); *see also Sprint Commc'ns Co., L.P. v. Theglobe.com, Inc.*, 236 F.R.D. 524, 529 (D. Kan. 2006) ("When a corporation produces an employee under Fed.R.Civ.P. 30(b)(6) to testify to corporate knowledge, the employee must provide responsive underlying factual information even though such information was transmitted through or from corporate lawyers.").  "Moreover, when a corporation produces an employee pursuant to a Fed. R. Civ. P. 30(b)(6) notice, it represents that the employee has the authority to speak on behalf of the corporation with respect to the areas within the notice of deposition." *Geiser*, 2005 WL 8174484, at *2 (cleaned up).

Based on the parties' representations, the Court is not convinced that Gilead satisfied its duty under Rule 30(b)(6) to provide a witness who was "knowledgeable on the subject matter identified" in Mr. Tucci's deposition notice and capable of

"testify[ing] about information known or reasonably available" to Gilead. *Robinson v. Countrywide Home Loans, Inc.*, No. 08-1563, 2010 WL 4225884, at *1 (W.D. Pa. Oct. 21, 2010) (Fischer, J.) (cleaned up).

**Deposition Topic 8**.[3]   Some of Mr. Tucci's questions on this topic sought privileged communications between a witness and in-house counsel conducting an investigation, or Gilead's legal interpretation and conclusions about the investigation.  For example, Mr. Tucci asked, "What facts or information did Mr. Durr provide to Gilead in response to Mr. Tucci's allegations?"  Phrasing a question as one probing for "facts or information" doesn't change the fact that it's asking for attorney-client communications.  *Smith v. Life Invs. Ins. Co. of Am.*, No. 07-681, 2009 WL 2045197, at *2 (W.D. Pa. July 9, 2009) (McVerry, J.) ("The client cannot be compelled to answer the question, 'What did you say or write to the attorney?,' but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney.").

But many questions were not aimed at privileged information, including:

- Q: Were any individuals investigated as a result of this letter? (Ex. 8, 98:23-24).

- Q: Who was interviewed as part of the inquiry into Mr. Tucci's letter to the Business Conduct Unit? (Ex. 8, 103:16-17).

- Q: And are you aware of any information beyond the written complaint that Mr. Tucci provided to elaborate on his complaint? (Ex. 8, 105:12-14).

---

[3] This topic reads: "Plaintiff's complaint in August 2018, including the allegations set forth in the Second Amended Complaint at paragraphs 89-98, and all action in response."

- Q: Other than the individuals that I've just asked you about, are you aware of any other individual that provided facts or information to Gilead in response to Mr. Tucci's allegations? (Ex. 8, 108:6-9).

- Q: Following Gilead's investigation into Mr. Tucci's allegations, was Mr. Durr given a verbal warning? (Ex. 8, 109:8-10).

- Q: In response to Mr. Tucci's allegations, was Mr. Durr given a written warning? (Ex. 8, 109:13-14).

- Q: In response to Mr. Tucci's complaints, was Mr. Durr subjected to corrective action? (Ex. 8, 109:16-17).

- Q: Was any record of Mr. Tucci's allegation provided to the employee relations department? (Ex. 8, 109:22-23).

- Q: Following the investigation into Mr. Tucci's allegations, was Mr. Vautier given a verbal warning? (Ex. 8, 110:4-5).

- Q: Was Mr. Vautier given a written warning following the allegations of Mr. Tucci? (Ex. 8, 110:15-16).

- Q: Was Mr. Vautier given any corrective action following the allegations of Mr. Tucci? (Ex. 8, 110:18-19).

- Q: Was any record of this allegation—of Mr. Tucci's allegations concerning Mr. Vautier placed anywhere in Mr. Vautier's personnel file? (Ex. 8, 110:21-23).

- Q: Was any record of Mr. Tucci's allegations provided to employee relations? (Ex. 8, 110:25-111:1).

- Q: What individuals have knowledge or information about the allegation that Mr. Tucci identified in No. 1? (Ex. 8, 112:18-19).

- Q: Again, what individuals have knowledge or information that can inform No. 2? (Ex. 8, 114:4-5).

- Q: And then, additionally, what individuals would have knowledge or information about the allegations contained in No. 3? (Ex. 8, 113:15-17).

- Q: Do you believe there was a verbal conversation with Mr. Tucci in addition to the letter? (Ex. 8, 115:17-18).

ECF 87, pp. 17-19. Gilead's refusal to answer those questions on privilege grounds was inappropriate.

**Mr. Tucci's employment history**. Mr. Tucci alleges that Mr. McFadden was not prepared to testify on certain relevant information, such as whether Mr. Tucci was given a fleet vehicle, whether his final paycheck included all accrued and unused vacation, and whether he received additional compensation as a regional trainer. ECF 92-2. Those are relevant and reasonable questions about Mr. Tucci's claim for damages.

### D. Rule 30(b)(6) designee Ashley Bender Spirn.

Mr. Tucci's request to re-open Ms. Spirn's Rule 30(b)(6) deposition is **GRANTED**. While a Rule 30(b)(6) deposition is not a memory test, a Rule 30(b)(6) deponent is a representative of the Defendant and must be prepared to answer questions within the Defendant's knowledge. *See Geiser*, 2005 WL 8174484, at *2. Ms. Spirn failed to provide even general or high-level information about certain topics for which she was noticed.[4] For example, Ms. Spirn was slated to testify about drug pricing, but was only "prepared to talk generally about the timing of each of [the drugs'] launches" instead. ECF 92-4, p. 8. She also stated that she couldn't testify about policies, procedures, and trainings for specialists in any detail because she

---

[4] Ms. Spirn was noticed for the topics regarding (1) policies, procedures, and training for HCV Therapeutic Specialists regarding prohibitions and restrictions on conduct regarding the 340B discount programs, (2) policies, procedures, and training for HCV Therapeutic Specialists discussing or providing information on "selling the spread," (3) contracts with HHS about the 340B program, and (4) inaccurate information contained in fingertip formularies.

"wasn't there" at the relevant trainings.  ECF 92-4, pp. 11-16.  It doesn't matter that she wasn't present at these trainings—it was Gilead's responsibility to prepare her as its Rule 30(b)(6) witness.  *Difiore v. CSL Behring, U.S., LLC*, No. 13-5027, 2015 WL 5316479, at *1 (E.D. Pa. Sept. 11, 2015) ("The organization represents that a 30(b)(6) deponent, unlike a lower level employee, is authorized to speak for it on the issue in terms of both facts and subjective beliefs and opinions." (cleaned up)).

The Court concludes that Gilead's Rule 30(b)(6) witnesses provided insufficient testimony.  *See Robinson*, 2010 WL 4225884, at *1-2; *Yerkes*, 2019 WL 12056384, at *4.  The Court therefore orders Gilead to reproduce its Rule 30(b)(6) witness or witnesses[5] for a re-opened deposition on the following topics:

- Topic 8, including, but not limited to, the questions that the Court identified above.
- Gilead's policies, procedures, and training for HCV Therapeutic Specialists and their supervisors on 340B drug discount programs and any limitations, restrictions, and/or prohibitions on sales employee conduct involving 340B drug discount programs.
- Gilead's policies, procedures, and training for HCV Therapeutic Specialists regarding discussing or providing information "about the spread" regarding Gilead products.
- Gilead's contract(s) with the Secretary of Health and Human Services related to its participation in the 340B program and pursuant to 42 U.S.C. § 256b(a).

---

[5] The Court orders that Gilead must provide a Rule 30(b)(6) witness, but does not order that Gilead must designate Mr. McFadden and/or Ms. Spirn for the deposition.

- • Inaccurate information contained in fingertip formularies as raised by Plaintiff in August 2018 and any steps Gilead took after that time to correct the information contained in the formularies.

## III.   The Court does not address Gilead's discovery dispute.

Gilead had raised that a discovery dispute existed because counsel improperly precluded Mr. Tucci from answering certain questions at his deposition on grounds of relevance and attorney-client privilege.  Gilead has since advised that this dispute was resolved, so the Court does not address it.

## IV.   The Court will not award attorney's fees.

Finally, Mr. Tucci requests that the Court order Gilead to bear the cost of this motion practice.  The Federal Rules of Civil Procedure provide that where a motion for an order compelling discovery is granted only in part, the Court "may issue any protective order authorized under Rule 26(c) and may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion."   Fed. R. Civ. P. 37(a)(5)(C).

The Court declines to issue sanctions or award fees and expenses in this discovery dispute given the "mixed" nature of its above rulings, and the somewhat complicated privilege issues.

*     *     *

Therefore, after careful consideration and consistent with the foregoing, it is hereby **ORDERED** that Mr. Tucci's second motion to compel (ECF 86) is **GRANTED IN PART AND DENIED IN PART**.  Gilead shall produce a supplemental privilege log and any responsive non-privileged documents **within 14 days of this Order**.

It is **FURTHER ORDERED** that Mr. Durr shall provide a sworn written declaration supplementing his deposition responses within **14 days of this Order**. If the declaration indicates that Mr. Durr's knowledge extends beyond privileged

communications with counsel, then he shall appear for a video deposition, not to exceed **2 hours** with costs to be borne by Gilead, within **30 days of this Order**.

It is **FURTHER ORDERED** that Gilead shall produce a Rule 30(b)(6) witness via video deposition so that Mr. Tucci may depose the witness on the topics outlined in this Order, with costs to be borne by Gilead. The deposition shall take place **within 30 days of this order**. Mr. Tucci is limited to taking **3 hours** of additional testimony.

DATED: October 17, 2023                    BY THE COURT:

                                           /s/ *J. Nicholas Ranjan*
                                           United States District Judge